In re IRON–OAK SUPPLY CORPORATION, a California Corporation, Debtor.

IRON–OAK SUPPLY CORPORATION and its Official Unsecured Creditors' Committee, Plaintiffs,

v.

NIBCO, INC., Defendant.

IRON–OAK SUPPLY CORPORATION and its Official Unsecured Creditors' Committee, Plaintiffs,

v.

NIBCO INDUSTRIAL SERVICE CENTER, Defendant.

IRON–OAK SUPPLY CORPORATION and its Official Unsecured Creditors' Committee, Plaintiffs,

v.

NIBCO NORTHWEST, INC., Defendant.

IRON–OAK SUPPLY CORPORATION and its Official Unsecured Creditors' Committee, Plaintiffs,

v.

NIBCO/QUALITY PIPING PRODUCTS, Defendant.

IRON–OAK SUPPLY CORPORATION and its Official Unsecured Creditors' Committee, Plaintiffs,

v.

NIBCO/SWM MARKETING CORP., Defendant.

Bankruptcy No. 91–20187–A–11.
Adv. Nos. 93–3191–B, 93–3240–C, 93–3246–A, 93–3247–A and 93–3260–A.

United States Bankruptcy Court, E.D. California.

Dec. 29, 1993.

Jane Dickson McKeag, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, CA, for plaintiffs.

Lisa L. Ditora, Downey, Brand, Seymour & Rohwer, Sacramento, CA, for defendants.

Before LOREN S. DAHL, Chief Judge, and DAVID E. RUSSELL and CHRISTOPHER M. KLEIN, Bankruptcy Judges.

## MEMORANDUM DECISION ON MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

CHRISTOPHER M. KLEIN, Bankruptcy Judge:

This motion to dismiss poses a question of first impression prompted by recent court of appeals decisions that saddle the debtor in possession with the trustee's two-year statute of limitations for bringing avoiding actions, 11 U.S.C. § 546(a)(1), measured from the date the bankruptcy case is filed.

The question is whether a representative of the estate appointed to bring preference actions pursuant to a confirmed plan of reorganization under 11 U.S.C. § 1123(b)(3)(B) in a case in which no trustee has been appointed can bring such actions after the debtor in possession's two years have lapsed. Here, the representative filed the adversary proceeding after the debtor in possession's time

expired but about six months after the liquidating plan was confirmed. One guidepost is that if a trustee were to be appointed, another two years would be triggered under section 546(a)(1) for bringing such actions.

The answer is that such actions brought by a designated representative under a plan before a trustee's two-year period expires under section 546(a)(1) are not time-barred.

*Facts*

The debtor, a plumbing distributor, filed this chapter 11 case January 8, 1991, in an effort to deal with secured debt exceeding $35 million and unsecured debt exceeding $25 million. The debtor gave up trying to turn the business around after about a year in chapter 11, ceased business operations, and began negotiating a joint liquidating plan of reorganization with the creditors' committee.

Under the plan of reorganization eventually proposed jointly by the debtor and the creditors' committee, most of the debtor's tangible property and cash went to secured and priority creditors. The unsecured creditors received all residual rights of the debtor, including about $1.8 million in net asset recoveries plus the right to pursue more than $9 million in preferences, of which up to $3.6 million was thought to be recoverable. The plan of reorganization unambiguously preserved those avoiding actions, assigned them to the unsecured creditors to be pursued by a representative appointed for such purpose, provided for the continued existence of the unsecured creditors' committee, and permitted the creditors' committee to select the representative of the estate.

This adversary proceeding is one of hundreds filed by the unsecured creditors' committee and the revested debtor (whom they appointed as their representative for such purpose more than two years after the bankruptcy case was filed) but within seven months after the plan of reorganization was confirmed.

The defendant moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(6) [1] as time-barred based on the Ninth

---

1. Federal Rule of Civil Procedure 12(b) applies in bankruptcy adversary proceedings. Fed.

Circuit's decision in *Upgrade Corp. v. Gov't Technology Servs., Inc. (In re Softwaire Centre Int'l, Inc.)*, 994 F.2d 682, *amended and reh'g denied*, (9th Cir.1993) ("*Softwaire Centre*"), in which it was held that section 546(a)(1), read in light of section 1107(a), affords a debtor in possession two years from the date of filing the case in which to bring avoiding actions.

### I

Preliminarily, the nature of and authority for the "en banc" procedure utilized in the determination of this Rule 12(b)(6) motion needs explication because the term "en banc" applied to trial courts is a misnomer in light of the inability of trial judges to bind each other or themselves in subsequent cases.

Bankruptcy courts have begun sitting en banc to consider a variety of matters. *In re Zimmerman*, 156 B.R. 192 (Bankr.W.D.Mich. 1993) (en banc); *In re Hausladen*, 146 B.R. 557 (Bankr.D.Minn.1992) (en banc); *In re Ferguson*, 134 B.R. 689 (Bankr.S.D.Fla.1991) (en banc). District courts have done the same. *City Fire Equip. Co. v. Ansul Fire Protection Wormald U.S., Inc.*, 125 B.R. 645 (N.D.Ala.1989) (division sitting en banc); *Merrill v. Abbott (In re Indep. Clearing House Co.)*, 77 B.R. 843 (D.Utah 1987) (en banc).

There are consistent threads when trial courts sit en banc. Each court faces multiple, but related, cases that involve a common question of law. Each court perceives a value in having all its trial judges simultaneously articulate a uniform interpretation of the law so as to promote consistent, predictable results, convenience of litigants, and efficiency in the management of the court's docket.

■ The trial court's inherent powers to control its docket is one justification for en banc sessions. It is settled that there is a discretionary "power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254, 57

S.Ct. 163, 166, 81 L.Ed. 153 (1936); *Link v. Wabash R.R.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n. 23, 103 S.Ct. 927, 939 n. 23, 74 L.Ed.2d 765 (1983); *cf. Swift v. Bellucci (In re Bellucci)*, 119 B.R. 763, 770 (Bankr.E.D.Cal.1990).

Nevertheless, inherent authority can be controversial as a basis for unusual judicial actions. The Sixth Circuit has, for example, explicitly rejected inherent authority as a rationale to justify mandatory summary jury trials. *In re NLO*, 5 F.3d 154, 158 (6th Cir.1993). The Seventh Circuit has publicly debated, en banc, whether inherent authority permits a trial judge to require that parties represented by counsel appear in person at a pretrial conference. *G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648 (7th Cir.1989) (6–5 decision).

■ The inherent authority of bankruptcy courts is more circumscribed and uncertain than that of the district courts because bankruptcy judges lack Article III powers. Thus, for example, the Ninth Circuit has held that bankruptcy judges do not have inherent power to punish for contempt. *Plastiras v. Idell (In re Sequoia Auto Brokers, Ltd.)*, 827 F.2d 1281 (9th Cir.1987). *Contra Burd v. Walters (In re Walters)*, 868 F.2d 665 (4th Cir.1989) (finding contempt power delegated by 11 U.S.C. § 105). The uncertainties regarding inherent authority prompt a search for specific authority.

■ Direct authority for en banc trial court procedures lies in Federal Rule of Civil Procedure 42, which applies in bankruptcy adversary proceedings and in contested matters.[2] It is a grant of broad discretion to a court to decide how cases are to be tried "so that the business of the court may be dispatched with expedition and economy while providing justice to the parties." 9 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2381 (1971). Coordinated pretrial proceedings are encouraged. *Manual for Complex Litigation, Second*

R.Bankr.P. 7012(b).

2. Fed.R.Bankr.P. 7042 and 9014.

§ 31.11 (2d ed. 1985). Joint hearings are expressly authorized. Fed.R.Civ.P. 42(a).

The en banc procedure used in this instance constitutes a joint hearing under Rule 42(a) for the limited purpose of entertaining reargument of these Rule 12(b)(6) motions. Each judge in this division of the court had previously heard argument of factually and substantively identical motions in separate adversary proceedings assigned to them and concluded that considerations of convenience and economy of administration would be served by reargument at a joint hearing.[3] The adversary proceedings here consolidated are assigned one to each judge. Individual orders consistent with this opinion will be issued by the individual judges in the respective adversary proceedings.

## II

This case falls in the interstices between two recent Ninth Circuit decisions interpreting the two-year statute of limitations for avoiding prepetition transfers prescribed by section 546(a)(1).[4] The precise question is whether, in a case without a trustee, section 546(a)(1) bars preference actions filed more than two years into the case pursuant to, and within two years of confirmation of, a plan of reorganization that requires such actions be retained and pursued by a representative of the estate, as authorized by section 1123(b)(3)(B), so that the proceeds could be distributed to unsecured creditors.[5]

The Ninth Circuit first held, agreeing with the Tenth Circuit, that section 546(a)(1) bars the debtor in possession, who performs the duties of the trustee,[6] from bringing an action under the trustee's avoiding powers more than two years after the filing of a voluntary chapter 11 case. *Softwaire Centre*, 994 F.2d at 683; *Zilkha Energy Co. v. Leighton*, 920 F.2d 1520, 1523–24 (10th Cir.1990).[7] In denying rehearing, the Ninth Circuit panel clarified that it was taking no position on whether the reorganization plan supplanted the deadline on the debtor in possession. *Softwaire Centre*, 994 F.2d at 684.[8]

Thereafter, the Ninth Circuit answered the related question of whether a successor trustee has another two years under section 546(a)(1).[9] It held that in a case in which a chapter 11 trustee had been appointed eight months after the case was filed, a successor

3. Each judge in the Sacramento Division of this court has literally hundreds of adversary proceedings in this bankruptcy case, a discretionary determination having been made that efficient management of the court was better served by dividing the adversary proceedings equally rather than following the usual practice of assigning all related cases to a single judge.

4. Section 546(a) provides:
 (a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
 (1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title; or
 (2) the time the case is closed or dismissed.
 11 U.S.C. § 546(a).

5. That section specifies that a plan may provide for:
 (B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest.
 11 U.S.C. § 1123(b)(3)(B).

6. The source of this authority is section 1107(a):
 (a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.
 11 U.S.C. § 1107(a).

7. While *Zilkha* and now *Softwaire Centre* are criticized by bankruptcy courts, *see, e.g., Official Unsecured Creditors' Comm. v. Leviton Mfg. Co. (In re Elec. Materials Co.),* 160 B.R. 1018 (Bankr. W.D.Mo.1993), the fact remains that both courts of appeals that have considered the issue have reached the same conclusion.

8. The following footnote was added to the opinion:
 SCI also asserts that certain deadlines in its approved reorganization plan supplanted the § 546(a) statute of limitations. We choose not to consider this issue because it was raised for the first time in a petition for rehearing. *See Escobar Ruiz v. I.N.S.,* 813 F.2d 283, 285–86 (9th Cir.1987). Accordingly, we take no position on this issue.
 *Softwaire Centre,* 994 F.2d at 684 n. 2.

9. The Tenth Circuit had reserved this question. *Zilkha,* 920 F.2d at 1524 n. 11.

chapter 7 trustee cannot bring an avoiding action more than two years after the original chapter 11 trustee was appointed. *Ford v. Union Bank (In re San Joaquin Roast Beef)*, 7 F.3d 1413, 1417–18 (9th Cir.1993) ("*San Joaquin Roast Beef*"); *cf., Independent Fire Ins. Co. v. Pender (In re Phillip)*, 948 F.2d 985 (5th Cir.1991).[10] Essential to that conclusion was a determination that the original trustee had two years from the date of appointment in which to pursue the trustee's avoiding powers. Thus, the running of the trustee's two years permitted by section 546(a)(1) is triggered by the first appointment of a trustee under either 11 U.S.C. § 702 or 11 U.S.C. § 1104 and is not extended or resurrected by appointment of a successor trustee or by conversion to another chapter.

### A

The upshot of *Softwaire Centre* and *San Joaquin Roast Beef* is that in the Ninth Circuit there are two distinct two-year limitation periods for avoiding actions subject to section 546(a)(1). A debtor in possession gets two years from the date of filing the case. All trustees get two years from the date the first trustee was appointed. In other circuits, where there is a possibility that a successor chapter 7 trustee would have another two years,[11] there could be three or more distinct two-year periods under section 546(a)(1) for the same preferential transfer.

The salient point is that separate limitation periods apply to at least some of the potential plaintiffs who may become entitled to pursue the actions covered by section 546(a)(1). There are the various trustees. There is the debtor in possession. 11 U.S.C. § 1107(a). There is the revested debtor under a plan of reorganization. 11 U.S.C. § 1123(b)(3)(B). There is the representative of the estate appointed for the purpose of pursuing such actions. 11 U.S.C.

§ 1123(b)(3)(B); *Briggs v. Kent (In re Professional Inv. Properties)*, 955 F.2d 623, 625–26 (9th Cir.1992); *Citicorp Acceptance Co. v. Robison (In re Sweetwater)*, 884 F.2d 1323, 1327–28 (10th Cir.1989). And, under case law, there is the third party who, with court approval, acquires the cause of action from the trustee. *Briggs*, 955 F.2d at 626.

### B

It does not offend the concept of a statute of limitations that different plaintiffs may be entitled to bring an action attacking the same transaction at different times. It is common, for example, that a statute of limitations does not run against a plaintiff who is under a disability. 54 C.J.S. *Limitations of Actions* § 105 (1993).

The fact of the matter is that most statutes of limitations are quirky policy determinations made by legislative bodies and are difficult to rationalize in a coherent intellectual framework. Perhaps Mr. Justice Jackson said it best writing for a unanimous Supreme Court in *Chase Sec. Corp. v. Donaldson*:

Statutes of limitations always have vexed the philosophical mind for it is difficult to fit them into a completely logical and symmetrical system of law. There has been controversy as to their effect. Some are of the opinion that like the analogous civil law doctrine of prescription limitations statutes should be viewed as extinguishing the claim and destroying the right itself. Admittedly it is troublesome to sustain as a "right" a claim that can find no remedy for its invasion. On the other hand, some common-law courts have regarded true statutes of limitation as doing no more than to cut off resort to the courts for enforcement of a claim. We do not need to settle these arguments.

Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients,

---

10. While the weight of lower court authority has found that a new two years begins to run upon conversion of a case to another chapter, both courts of appeals that have considered the question have reached the opposite conclusion.

11. Appellate decisions by district courts in three other circuits have concluded that the successor

chapter 7 trustee is entitled to another two years under section 546(a)(1). *McCuskey v. FBS Leasing Corp. (In re Rose Way, Inc.)*, 160 B.R. 811 (S.D.Iowa 1993); *Amazing Enter. v. Jobin (In re M & L Business Machines, Inc.)*, 153 B.R. 308 (D.Colo.1993); *Nichols v. Wood (In re Wood)*, 113 B.R. 253 (S.D.Miss.1990).

rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a "fundamental" right or what used to be called a "natural" right of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control.

*Chase Sec. Corp. v. Donaldson,* 325 U.S. 304, 313–14, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945) (citations and footnotes omitted).

■ To be sure, a cause of action that is purely a creature of statute and that, according to the statute, must be brought within a fixed period may be viewed as a statute of repose that extinguishes the right of action. *William Danzer & Co. v. Gulf & Ship Island R.R.,* 268 U.S. 633, 636, 45 S.Ct. 612, 613, 69 L.Ed. 1126 (1925); *The Harrisburg,* 119 U.S. 199, 214, 7 S.Ct. 140, 147, 30 L.Ed. 358 (1886). But subsequent decisions have criticized and narrowly confined such decisions and have shown a readiness to apply equitable tolling doctrines. *E.g., American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 556–59, 94 S.Ct. 756, 767–69, 38 L.Ed.2d 713 (1974); *Glus v. Brooklyn E. Dist. Terminal,* 359 U.S. 231, 234–35, 79 S.Ct. 760, 762–63, 3 L.Ed.2d 770 (1959). A limitation that extinguishes the right of action and that forbids equitable tolling must be unequivocal and unambiguous. *Cf. Burnett v. New York Cent. R.R.,* 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). In applying equitable tolling to statutory causes of action, the test is "whether tolling the limitation in a given context is consonant with the legislative scheme."

*American Pipe,* 414 U.S. at 557–58, 94 S.Ct. at 768.

■ Section 546(a)(1) is open to a number of interpretations and can hardly be described as unequivocally terminating the trustee's avoiding powers merely because the debtor in possession sits on its hands for two years. It makes no mention of either the debtor in possession or of section 1107, which authorizes the debtor in possession to perform the duties of the trustee. Rather, its language focuses on the actual appointment of a trustee. On that basis alone, section 546(a)(1) is not a statute of repose.

■ Even if the language of section 546(a)(1) could be viewed as terminating the avoiding powers after two years have elapsed with the debtor in possession, the legislative scheme of the avoiding powers that plainly seeks to maximize the value of the bankruptcy estate would warrant equitable tolling for the period that the debtor is in control of the estate by virtue of its status as debtor in possession. As noted below, the debtor in possession has peculiar features and interests that conflict with and are inconsistent with the rigorous exercise of avoiding powers. The equitable tolling test of *American Pipe* would easily be satisfied.

■ In all events, the Ninth Circuit's decision in *San Joaquin Roast Beef* binds this court and is completely at odds with interpreting section 546(a)(1) as a statute of repose. Accordingly, the defendants' argument to that effect is rejected. The statutory right of action was not extinguished on the second anniversary of the filing of the case. The question then becomes whether this plaintiff is eligible under section 546(a)(1) to prosecute the action.

### III

The motion to dismiss in this instance requires an answer to part of the question expressly left open in *Softwaire Centre.* Specifically, what effect does a confirmed plan of reorganization designating a representative of the estate to pursue the trustee's avoiding powers have on section 546(a)(1) when the trustee's two years recognized in *San Joaquin Roast Beef* have not yet begun

to run? The facts do not, however, necessitate any consideration of whether a plan could extend the period or could resurrect an expired section 546(a)(1) limitations period.

The plan of reorganization in question is a straightforward liquidating plan. Specific property is distributed among the various classes of creditors. 11 U.S.C. § 1123(a)(5)(D). The unsecured creditors receive the right to recover more than $9 million in avoidable preferences, which right was valued at confirmation at $3.6 million, plus miscellaneous other property worth about $1.8 million. The debtor is permanently out of business, and its owners receive nothing.

The plan requires the unsecured creditors to appoint a representative of the estate for the purpose of prosecuting the avoiding actions. They accepted the plan as a class, even though they were agreeing to sue themselves; most (but not all) of the preferences having been received by unsecured creditors. In effect, they were agreeing to redistribute among themselves pro rata the preferential payments that were made within ninety days before the case was filed.

### A

The provisions in the plan providing for a representative of the estate to prosecute the trustee's avoiding actions are significant. The statute explicitly provides that a plan may provide for retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any claim belonging to the estate. 11 U.S.C. § 1123(b)(3)(B).

█ A preference action qualifies as a "claim belonging to the estate" for purposes of section 1123(b)(3)(B) because any transfer avoided as a preference is preserved for the benefit of the estate.[12] 11 U.S.C. § 551. The plain language of the statute makes the

representative of the estate eligible to bring the action as a trustee, or even as the debtor.

The question is whether the representative of the estate is subject to the debtor in possession's limitations deadline, the trustee's later deadline, or some other deadline.[13] The facts of this case place the focus on the trustee's limitations period.

### B

█ Whether the avoiding actions brought by the representative of the estate appointed pursuant to the plan after the debtor in possession's time lapses are time-barred by section 546(a)(1) must be measured against the alternative of the appointment of a trustee. The controlling law in this circuit, *San Joaquin Roast Beef*, teaches that the first appointment of a trustee triggers another two years under section 546(a)(1). As no trustee has yet been appointed in this case, that two-year period lies in the future. In other words, in all events, there is somebody—a trustee—who plainly would not be time-barred.

The appointment of a trustee is a virtual certainty if the representative of the estate is held to be time-barred because the debtor in possession's time lapsed. In this instance, it likely would be a chapter 7 trustee, because it is apparent that the expected recoveries from the preference actions were critical to an essential element for confirmation of a plan of reorganization: that the plan be feasible. That is, it must be established that confirmation is not likely to be followed by liquidation or need for further financial reorganization except as proposed in the plan. 11 U.S.C. § 1129(a)(11). Without the preference recoveries, substantial consummation could not be effectuated. That would constitute cause for dismissing or converting the case to chapter 7, whichever is in the best interests of creditors and the estate. 11 U.S.C. § 1112(b). *See In re Staff Inv. Co.*,

---

12. Moreover, two courts of appeals, the Ninth and Tenth Circuits, have considered the matter and agree that the trustee's avoiding powers can be exercised by a creditor pursuing interests common to all creditors or appointed for the purpose of enforcing a plan. *Briggs*, 955 F.2d at 625–26; *Citicorp Acceptance Co.*, 884 F.2d at 1327–28.

13. It is assumed, purely for sake of analysis and without intimating any view, that a revested debtor cannot shed the limitations period that it was saddled with, according to *Softwaire Centre* and *Zilkha*, by virtue of serving in the distinct capacity of debtor in possession. The Ninth Circuit has expressly left that question open. *Softwaire Centre*, 994 F.2d at 684 n. 2.

146 B.R. 256, 260–62 (Bankr.E.D.Cal.1992). The best interests of creditors and the estate would, a fortiori, be served by conversion to chapter 7 rather than dismissal because a trustee would thereupon have two years to file an adversary proceeding identical to the one at hand. *San Joaquin Roast Beef,* 7 F.3d at 1417–18.

Reality, thus, counsels that it would be futile to dismiss this adversary proceeding as time-barred in the hands of the representative of the estate appointed pursuant to the plan to prosecute it. Under the law of the circuit, the same action would not be time-barred in the hands of the ensuing trustee. Moreover, the trustee would have a duty to bring meritorious preference actions.

### C

A "representative of the estate" under section 1123(b)(3)(B) is more analogous to a trustee than to a debtor in possession. Both the representative and the trustee are third parties possessed of duties and powers that are discrete and readily ascertainable in their essential properties. A representative's duties are prescribed by the plan specifying retention and enforcement of causes of action. A trustee's duties are prescribed by the Bankruptcy Code. Each exists in a chapter 11 case by virtue of a specific court order—the order confirming a plan of reorganization and the order approving the appointment of the trustee. Their duties are intended to be performed for the benefit of others. Their tenure is expected to be of limited duration.

In contrast, the debtor in possession is a peculiar beast that has more and conflicting irons in the fire. Although performing the fiduciary duties of the trustee, it paradoxically also acts out of self-interest as it tries to reorganize. It aspires to unlimited tenure. And it normally exists by operation of law unless and until such time as there is a court order approving the appointment of a trustee or confirming a plan of reorganization.

Since the representative of the estate lacks the characteristics that distinguish the debtor in possession, it makes more sense to conclude that the representative appointed under the plan should not be burdened by

the debtor in possession's foreshortened limitations period. Rather, the representative of the estate is the functional equivalent of a trustee created by virtue of the order confirming the plan of reorganization.

The order confirming a liquidating plan of reorganization calling for the appointment of a representative of the estate to prosecute preference actions, taken in light of the fact that the alternative to plan confirmation is an order leading to appointment of a trustee (under either sections 702 or 1104), rekindles the time for bringing actions that a trustee could bring without being time-barred under section 546(a)(1).

Accordingly, the motion to dismiss will be denied by separate order.