In re AUSTIN TRUCK RENTAL,
INC., Debtor.

Edward M. MAZZE, Trustee, Plaintiff,

v.

WILMINGTON SAVINGS FUND
SOCIETY, F.S.B. a/k/a
WSFS, Defendant.

Bankruptcy No. 92–20452SR.
Adv. No. 93–0546.

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 9, 1995.

Alan M. Rosen, Michael J. Cordone, Klehr, Harrison, Harvey, Branzburg & Ellers, Philadelphia, PA, for Wilmington Sav. Fund Soc., F.S.B.

John A. Wetzel, Jeffrey L. Goodman, Swartz, Campbell & Detweiler, Philadelphia, PA, for Chapter 7 trustee.

Frederic J. Baker, U.S. Trustee, Philadelphia, PA.

## OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

This is an action in which the trustee has sued Wilmington Savings Fund Society, F.S.B. ("WSFS") to recover alleged preferential transfers made to it by the Debtor, Austin Truck Rental, Inc. ("the Debtor"). The proceeding is before the Court upon a motion to dismiss filed by WSFS. WSFS contends this adversary proceeding must be dismissed because the limitations period set forth in 11 U.S.C. § 546(a)(1) expired prior to the filing of this lawsuit. If the Court does not find that the adversary proceeding is time-barred, WSFS contends that the extended insider-preference period should not be applied and all claims to avoid transfers made more than ninety days before the bankruptcy petition was filed must be dismissed. For the reasons set forth below, the Court will deny WSFS' Motion to Dismiss the adversary proceeding as untimely, and will also deny the alternative relief sought.

The underlying bankruptcy case was commenced when the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, on February 5, 1992. On October 19, 1992, the Court entered an order converting the Debtor's Chapter 11 case to a proceeding under Chapter 7. The trustee was appointed as an interim Chapter 7 trustee at the same time, and is currently serving as the permanent Chapter 7 trustee. This adversary proceeding was brought on July 20, 1994, more than two years after the Debtor filed the Chapter 11 petition, but within two years of the appointment of the Chapter 7 trustee.

If the two-year statute of limitations started running upon the filing of the Debtor's Chapter 11 petition, and a new two-year period did not commence upon the conversion of the Chapter 11 case to a case under Chapter 7 and the concomitant appointment

of a Chapter 7 trustee, the limitations period had run by the time this adversary proceeding was filed. If, however, a new two-year period commenced upon the appointment of a Chapter 7 trustee, this action was timely filed.

## I.

The applicable statute of limitations provides:

(a) An action or proceeding under section 544, 545, 548, or 553 of this title may not be commenced after the earlier of—

(1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title; or

(2) the time the case is closed or dismissed.

11 U.S.C. § 546(a).

■ A majority of courts interpreting section 546 have determined under a plain meaning approach, that an appointed trustee has two years subsequent to his appointment to initiate an avoidance action. The Third Circuit Court of Appeals recently determined, however, that the limitations period for commencing an avoidance action applies to debtors in possession. *Construction Management Services, Inc. v. Manufacturers Hanover Trust Company (In re Coastal Group)*, 13 F.3d 81 (3d Cir.1994). Nevertheless, numerous questions regarding the proper construction of section 546 still plague the courts of this circuit, as well as courts in every other circuit—including those circuits where it was previously established that the limitations period for commencing an avoidance action applies to debtors in possession.[1] *Coastal Group* does not provide any indication whether once a voluntary Chapter 11 petition is filed, and the limitations period begins to run against the filing debtor in possession, whether conversion to Chapter 7 and the concomitant appointment of a Chapter 7 trustee,[2] either before or after the two-year statutory period has run against the debtor in possession[3], results in the commencement of a new two-year period. My colleagues in this Court have interpreted *Coastal Group* and rendered decisions reaching differing conclusions to those questions

1. A recent and comprehensive survey of the numerous judicial decisions, debating whether, how and to whom to apply the two-year limitation on avoiding actions in section 546(a)(1), is set forth in *Reese v. First Tennessee Bank, N.A. (In re Brooke Meade Health Care Center, Inc.)*, 165 B.R. 195, 196 n. 5 (Bankr.M.D.Tenn.1994). *See also, U.S. Brass & Copper Co., v. Caplan (In re Century Brass Products)*, 22 F.3d 37 (2d Cir.1994) (the section 546(a)(1) limitations period is applicable to a debtor in possession); *contra, Maurice Sporting Goods, Inc. v. Maxway Corp. (In re Maxway Corp.)*, 27 F.3d 980 (4th Cir.), *cert. den'd*, —— U.S. ——, 115 S.Ct. 580, 130 L.Ed.2d 495 (1994) (the 546(a)(1) limitations period for avoidance proceedings begins to run upon the appointment of a trustee, not upon the filing of a chapter 11 petition).

   *Brooke Meade Health Care Center* involved the same issue presented by the instant case, however, the Sixth Circuit Court of Appeals has not yet determined that the limitations period in section 546(a)(1) for commencing an avoidance action applies to debtors in possession. Prior to *Coastal Group*, it was generally believed in this district that section 546 only applied to a trustee, *In re Nelson Co.*, 167 B.R. 1018, 1020 (Bankr.E.D.Pa.1994), and for that reason this Court would have summarily adopted the approach and rationale set forth in *Brooke Meade Health Care Center*, and resolved this motion against WSFS, without further discussion, in reliance on the plain language of section 546(a)(1).

2. Section 546 discusses appointment of a trustee, not conversion of a case from chapter 11 to chapter 7. Accordingly, the Court believes that the appointment of a statutory trustee is the significant event for purposes of analyzing section 546 issues. *See In re Nelson*, 167 B.R. 1018, 1021 (Bankr.E.D.Pa.1994); *In re Iron–Oak Supply Corp.*, 162 B.R. 301, 307 (Bankr.E.D.Cal. 1993).

3. The court stated "[w]e do not need to reach the question of whether a trustee appointed more than two years after the Chapter 11 case began may commence adversary proceedings." *Coastal Group*, 13 F.3d at 86 n. 7. In leaving that question open, the Third Circuit necessarily left open the question of whether the appointment of a trustee, during the initial two-year period after a bankruptcy petition is filed, recommences a new two-year limitations period.

   The Court believes that the silence of the circuit courts, which determined that section 546(a)(1) is applicable to debtors in possession, on the effect of the appointment of a statutory trustee (or conversion of the case) is readily explained. Appellate courts routinely avoid issues with which they are not confronted. The *Coastal Group* court's silence supports this Court's conclusion that *Coastal Group* is simply inapposite on these facts.

left unanswered by *Coastal Group* on facts very similar to the facts presented by the instant case. *See In re Harry Levin, Inc.,* 175 B.R. 560 (Bankr.E.D.Pa.1994) (Judge Fox) (holding that Congress intended the two-year limitations period to commence with the existence of a Chapter 11 debtor in possession, and that Congress also intended that this limitations period not begin anew upon conversion to Chapter 7)[4]; *contra, In re Nelson Co.,* 167 B.R. 1018 (Bankr.E.D.Pa. 1994) (Judge Sigmund) (holding that a new two-year limitations period commences upon the appointment of the first trustee under any of the sections referenced in section 546(a), even though the debtor in possession had remained in control of its own case for more than two years after filing its Chapter 11 petition). Accordingly, a review of the various court of appeals decisions, as well as the developing case law discussing section 546, leading up to and interpreting *Coastal Group* becomes necessary.

The Tenth Circuit Court of Appeals first considered whether the limitation period in section 546(a) applied to debtors in possession as well as to trustees. *Zilkha Energy Co. v. Leighton,* 920 F.2d 1520, 1523–24 (10th Cir.1990), *aff'd on appeal after remand,* 999 F.2d 548 (10th Cir.1993). *Zilkha* construed section 546(a) in light of section 1107(a), which provides that debtors in possession shall have the same powers and limitations as trustees. *Id.*[5] The *Zilkha* court said "[w]e do not believe that Congress intended to limit actions filed by an appointed trustee to two years without making the same restriction apply to a debtor in possession who is the functional equivalent of an appointed trustee." *Id.* at 1524. Hence, *Zilkha* concluded, "[w]e construe section 546(a)(1) to apply to actions filed by a debtor in possession, and we believe the period of limitations begins to run from the date of the filing of a petition for reorganization under Chapter 11." *Id.*[6] In *Upgrade Corporation v. Government Technology Services, Inc. (In re Softwaire Centre International, Inc.),* 994 F.2d 682, 683 (9th Cir.1993) (*en banc*), the Ninth Circuit summarily adopted the holding and rationale of *Zilkha.*

On the other hand, the appellate decisions applying section 546(a)(1) after the appointment of a statutory trustee are consistent with the view that the two-year limitation period should be counted from appointment of the first statutory trustee, not from the earlier date of the filing of the petition. Notably, after the *en banc* decision in *Softwaire Centre* was rendered, a three judge panel of

---

**4.** Although *In re Harry Levin, Inc.* had not been filed at the time the parties argued the instant case, and accordingly neither party had relied *Levin's* reasoning, WSFS subsequently filed a Supplemental Memorandum suggesting that I adopt *Levin's* holding and analysis. For the reasons set forth below, I decline this invitation.

My reading of *Levin* is that its conclusion is based primarily on the holdings of two cases. First, that Court interpreted *Coastal Group* and concluded "if one accepts that [*Coastal Group* means], for purposes of section 546(a)(1), that a chapter 11 debtor in possession is the equivalent of a chapter 11 trustee, then the conclusion that the two year limitations period begins to run anew upon the appointment of the first statutory trustee becomes problematic." *In re Harry Levin, Inc.,* 175 B.R. 560, 576–77 (Bankr.E.D.Pa. 1994). The Coastal Group court said that "section 1107 places a debtor in possession in the shoes of a trustee in every way, not that a debtor in possession is the 'equivalent' of a trustee". The appellate decisions upon which the *Coastal Group* court to some extent relied, *Zilkha* and *Softwaire Centre,* recognize that a debtor in possession is not the equivalent of a trustee, but instead referred to a debtor in possession as the "functional equivalent," of a trustee. *See, e.g.,*

*Zilkha Energy Co. v. Leighton,* 920 F.2d 1520, 1524 (10th Cir.1990). This Court does not read *Coastal Group* to require that a debtor in possession is to be considered the "equivalent" of a Chapter 11 trustee. *Coastal Group* simply restricts the amount of time within which a debtor in possession may initiate an avoidance action. I am convinced that *Coastal Group* is inapposite on these facts.

Second, the *Levin* court agreed with, and therefore adopted, the conclusion reached in *Dumas v. Research Testing Lab, Inc. (In re EPI Products USA, Inc.),* 162 B.R. 1 (Bankr.C.D.Cal. 1993). As discussed *infra,* I find that the court's reasoning in *In re EPI Products* is flawed.

**5.** "Subject to any limitations on a trustee serving in a case under this chapter ... a debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties ... of a trustee serving in a case under this chapter." 11 U.S.C. § 1107(a) (West 1993).

**6.** The Tenth Circuit took no position on whether the appointment of a trustee in a chapter 11 case would change the analysis. *Zilkha,* 920 F.2d at 1523 n. 11.

the Ninth Circuit Court of Appeals counted the two-year limitations period from the appointment of a Chapter 11 trustee, rather than from the filing of the Chapter 11 petition, 10 months earlier, concluding that "a plain reading of section 546(a) is that the two-year statute of limitations begins running from the date the first trustee is appointed and all subsequent trustees are subject to the same two-year statute of limitations.... the statute of limitations began running on the date the Chapter 11 trustee was appointed," not when the bankruptcy petition was filed. *Ford v. Union Bank (In re San Joaquin Roast Beef)*, 7 F.3d 1413, 1414–16 (9th Cir.1993).[7]

Similarly, in *McCuskey v. Central Trailer Services, Inc., Ltd.*, 37 F.3d 1329 (8th Cir. 1994), the Eighth Circuit Court of Appeals determined that the two-year limitations period for commencing an avoidance action is properly measured from the date of the appointment of the first statutory trustee, rather than from the date of the filing of a Chapter 11 petition. In *McCuskey*, the debtor filed a Chapter 11 petition on June 8, 1989, and continued operation its business under sections 1107 and 1108 until December 22, 1989, when the bankruptcy court appointed a statutory Chapter 11 trustee pursuant to section 1104. The case was converted and a Chapter 7 trustee appointed on July 2, 1990. In concluding that an avoidance action filed July 2, 1992, was untimely, the Eighth Circuit, following *San Joaquin Roast Beef,* concluded that "the two-year statute of limitations period did not begin to run anew with the appointment of the Chapter 7 trustee.... a plain reading of section 546(a) is that the two-year statute of limitations begins running from the date the first trustee, [the Chapter 11 trustee], [wa]s appointed." *McCuskey*, 37 F.3d at 1332.

Long before *San Joaquin Roast Beef* or *McCuskey,* the Fifth Circuit counted the two years from the appointment of a trustee in 1983 rather than from the commencement of the Chapter 11 case in 1981, observing: "We agree that the limitations period under § 546(a) *should commence consistent with the appointment of the trustee through a written order....* As a general rule, commencing the limitations period of § 546(a) on the date of written order appointing the trustee best furthers the policy of providing litigants with certainty in regard to time periods in which actions can be prosecuted." *MortgageAmerica Corp. v. American Fed. Sav. & Loan (In re MortgageAmerica Corp.)*, 831 F.2d 97, 98 (5th Cir.1987) (emphasis added).

As already noted, the Third Circuit recently determined that the section 546(a)(1) limitations period for commencing an avoidance action applies to debtors in possession. Like the *Zilkha* court, the court interpreted section 546(a) in conjunction with section 1107(a), and concluded that "[section 1107(a) ] places a debtor in possession in the shoes of a trustee in every way.... One of the limitations on the rights and powers of the trustee is the time bar set forth in § 546(a)(1)." *Coastal Group*, 13 F.3d at 84.

■■■ *Coastal Group* could, arguably, be interpreted to mean that, since a debtor in possession is "in the shoes of a trustee in every way," and the limitations period commences to run against the debtor in possession upon the filing of the petition, the statute of limitations also runs against a subsequently appointed trustee, in cases where a trustee is subsequently appointed, when the limitations period initially begins running against the debtor in possession upon the filing, and does not recommence upon the trustee's appointment.[8] This Court is not

---

7. In its initial Memorandum of Law, WSFS inexplicably relied on *San Joaquin Roast Beef* to support its contention that the section 546(a)(1) limitations period begins to run upon the filing of the debtor's bankruptcy petition, but does not recommence upon the appointment of the first appointed statutory trustee. WSFS tacitly moved away from that incorrect reading of *San Joaquin Roast Beef* in its Supplemental Memorandum of Law.

8. In addition to *In re Harry Levin, Inc.*, 175 B.R. 560 (Bankr.E.D.Pa.1994), the Court has only been able to identify two other published decisions, which reach a similar conclusion on the issue. *See Dumas v. Research Testing Lab, Inc. (In re EPI Products USA, Inc.)*, 162 B.R. 1 (Bankr.C.D.Cal.1993); *In re Sahuaro Petroleum & Asphalt Company*, 170 B.R. 689 (C.D.Cal. 1994).

persuaded, however, that such an interpretation of *Coastal Group* is warranted.

No statutory trustee was appointed in *Coastal Group* and, accordingly, the decision is inapposite.[9] The *Coastal Group* court determined that not only trustees, but also debtors in possession are subject to the two-year limitations period provided in section 546(a)(1). The court did not, however, question the holdings of the vast majority of courts, which have interpreted the plain language of section 546(a) to provide a renewed two-year limitations period upon the appointment of a trustee. *See, e.g., In re Brooke Meade Health Care Center, Inc.,* 165 B.R. 195, 196 (M.D.Tenn.1994) (Section 546(a) is unambiguous with respect to the period of limitation within which a Chapter 7 trustee must commence an avoiding action. . . . The two-year limitation in section 546(a)(1) begins to run "after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202. . . ."); *see also, In re Racusins, Inc.,* 169 B.R. 100, 103 (Bankr.M.D.Pa.1994) (distinguishing *Coastal Group* and allowing a trustee a two-year period within which to initiate an avoidance proceeding).

Moreover, the *Coastal Group* court did not determine that a subsequently appointed trustee would be time-barred, if the debtor in possession had maintained control of its Chapter 11 case for more than two years following the debtor's bankruptcy filing, *Coastal Group,* 13 F.3d at 86 n. 7, nor has any other court of appeals so held. Certainly, if a trustee is appointed within two years of the bankruptcy petition, *Coastal Group* does not expressly bar the trustee's filing of avoidance actions.

Additionally, the Coastal Group court did not determine that the limitation on a debtor in possession should be "tacked" or "added" to calculate the limitation period for a subsequently appointed Chapter 7 trustee. And nothing in the language of section 546(a), nor any other Code provision, suggests that such "tacking" or "addition" is intended.

The Court is also persuaded by the uniformity of the appellate decisions applying section 546(a)(1) after the appointment of a statutory trustee and holding that the two-year limitation period should be counted from appointment of the first statutory trustee, not from the earlier date of the filing of the bankruptcy petition. *McCuskey v. Central Trailer Services, Inc., Ltd.,* 37 F.3d 1329 (8th Cir.1994); *In re San Joaquin Roast Beef,* 7 F.3d 1413 (9th Cir.1993); and *In re Mortga-*

---

The Court believes that the persuasiveness of the holdings of *EPI Products USA* and *Sahuaro Petroleum* interpreting *Softwaire Centre* and *San Joaquin Beef,* is seriously undercut by decisions, from the same circuit—and even the same district, which are directly contrary, and which this Court find to be the correct interpretation of *Softwaire Centre* and *San Joaquin Beef.* Compare *EPI Products USA* and *Sahuaro Petroleum,* interpreting *Softwaire Centre* and *San Joaquin Beef,* and concluding that after conversion from Chapter 11 to Chapter 7, the two-year limitation period of section 546(a)(1) is counted from the filing of the petition); with, *In re Iron–Oak Supply, Corp.,* 162 B.R. 301, 308 (Bankr.E.D.Cal. 1993), interpreting *Softwaire Centre* and *San Joaquin Beef,* and concluding that "the first appointment of a trustee triggers another two[-year limitations period] under section 546(a)(1). . . . As no trustee has been appointed in this case, that two-year period lies in the future."; *Daff v. Regal Recovery, Inc. (In re Continental Capital & Credit, Inc.),* 158 B.R. 828 (Bankr.C.D.Cal.1993) after conversion from chapter 11 to chapter 7, the two-year limitations period in section 546(a)(1) is counted from the appointment of a Chapter 7 trustee, citing *Softwaire Centre.*

9.  In *Daff v. Regal Recovery, Inc. (In re Continental Capital & Credit, Inc.),* 158 B.R. 828 (Bankr.

C.D.Cal.1993), the Debtor filed a voluntary Chapter 11 case, which was converted to a case under Chapter 7 within 15 months of the original filing. The Chapter 7 trustee filed an avoidance action within two years of his appointment, but more than two years after the Chapter 11 petition was filed. The defendant in the avoidance action filed a motion to dismiss asserting that the Chapter 7 trustee's action was untimely. In other words, the case progressed in a manner which virtually is the mirror image of the progression of the instant case. The Court concluded that *"the facts in this case are clearly distinguishable [from those presented in Softwaire].* Id. at 829. Like *Coastal Group,* the *Softwaire Centre* and *Zilkha* cases did not involve conversion from Chapter 11 to Chapter 7 and the concomitant appointment of a trustee. Indeed, no trustee was appointed in those instances. The holdings of *Softwaire Centre* and *Zilkha* merely extends the plain meaning of § 546(a)(1), when read in light of § 1107(a), to apply to a debtor in possession."

Similarly, in *In re Fisher,* 162 B.R. 474, 477 (Bankr.N.D.Ohio 1993), the court found that *Softwaire Centre* and *Zilkha* are inapposite where a statutory trustee is appointed.

*geAmerica Corp.*, 831 F.2d 97, 98 (5th Cir. 1987).

For those reasons, the Court believes the *Coastal Group* holding should be limited to making avoidance actions filed by a Chapter 11 debtor in possession, who remained in control of his case for more than two years, and at the same time failed to commence avoidance actions within the two-year period following the filing of his Chapter 11 petition, untimely.

If so limited, *Coastal Group* allows two distinct limitation periods: (1) a two-year period commencing upon the filing of the bankruptcy petition, which would run against the debtor in possession only; and (2) a renewed two-year period commencing upon the appointment of the first statutory trustee under any of the sections enumerated in section 546(a). *See In re Nelson*, 167 B.R. at 1023; *In re Iron–Oak Supply, Corp.*, 162 B.R. 301, 306 (Bankr.E.D.Cal.1993).[10] Accordingly, since the trustee filed the underlying adversary proceeding within two years of his appointment, his filing was timely.

## II.

WSFS relies on *In re Sahuaro Petroleum & Asphalt Company*, 170 B.R. 689 (C.D.Cal. 1994), to support its position that the section 546(a)(1) two-year limitations period begins to run upon the filing of a debtor's bankruptcy petition, and does not recommence upon the appointment of the first appointed statutory trustee, but rather expires on the second anniversary of the bankruptcy filing. *Id.* at 691. The *Sahuaro Petroleum* decision was partially predicated on *Dumas v. Research Testing Lab, Inc. (In re EPI Products USA, Inc.)*, 162 B.R. 1 (Bankr.C.D.Cal.1993).

A similar chronology of events occurred in both *EPI Products USA* and *Sahuaro Petroleum.* The respective debtors filed voluntary Chapter 11 cases which were later converted to Chapter 7 cases within the two-year period following the filing of the Chapter 11 petitions. Chapter 7 trustees were appointed, and those trustees subsequently filed avoidance actions. Both courts interpreted the Ninth Circuit's seemingly irreconcilable opinions in *Softwaire Centre*, 994 F.2d 682, 683 (9th Cir.1993) and *San Joaquin Roast Beef*, 7 F.3d 1413, 1414–15 (9th Cir.1993), and reached the conclusion that the section 546(a)(1) two-year limitations period begins to run upon the filing of the debtor's bankruptcy petition, and does not recommence upon the appointment of the first appointed statutory trustee, using the following syllogism: (["first proposition"]) "since the *San Joaquin Roast Beef* case [holds] that the conversion to a Chapter 7 proceeding does not create a new period of limitations prescribed under § 546(a); (["proposition (2)"]) and relying upon the *Softwaire [Centre] International, Inc.* case, holding that § 546(a) applies to debtors in possession and commences to run from the petition date; (["conclusion"]) this bankruptcy court concludes that in the instant case the two-year statute of limitations prescribed in section 546(a) commenced on the date of the filing of the original Chapter 11 petition and terminated two years later on August 21, 1992 [the second anniversary of the filing of the petition.]" *EPI Products USA*, 162 B.R. at 4; *accord, Sahuaro Petroleum & Asphalt Company*, 170 B.R. 689, 692–93 citing *EPI Products USA*, 162 B.R. at 4, and adopting a virtually identical three-step analysis which led to an identical conclusion.

The court's logic appears to be flawed.[11] Its first proposition, "since the *San Joaquin Roast Beef* case holds that the conversion to a Chapter 7 proceeding does not create a new period of limitations prescribed under section 546(a)," not only appears factually deficient, the proposition misstates the holding of the case.

The chronology of events in *San Joaquin Roast Beef* is as follows: (1) the voluntary

10. The Court need not address the more difficult issue presented by *Nelson*, whether the appointment of a trustee more than two years after the bankruptcy petition was filed results in a renewed two-year period, since, in the instant case, a Chapter 7 trustee was appointed within nine months of the filing of the petition.

11. Other courts outside the Ninth Circuit have expressly disagreed with the *EPI* decision. *See, e.g., In re Colonial Realty Co.*, 168 B.R. 512, 519 (Bankr.D.Conn.1994).

Chapter 11 was filed on July 21, 1987; (2) a Chapter 11 trustee was appointed on May 2, 1988; (3) the order appointing the trustee was docketed on May 4, 1988; (4) the Chapter 11 case was converted to Chapter 7 on May 30, 1989, and a Chapter 7 trustee was subsequently appointed; (5) that trustee filed an avoidance action on May 3, 1990. While it is accurate that the Ninth Circuit determined the Chapter 7 trustee's filing was untimely because conversion of the Chapter 11 case to a case under Chapter 7 did not automatically recommence the limitations period, the court concluded that May 2, 1990, two years after the Chapter 11 trustee was appointed, was the final day on which a timely avoidance action could have been filed. *Id.,* 7 F.3d at 1418. Indeed, *San Joaquin Roast Beef* holds that "a plain reading of section 546(a) is that the two-year statute of limitations begins running from the date the first trustee is appointed ... the statute of limitations began running on the date the Chapter 11 trustee was appointed," not when the bankruptcy petition was filed. *Id.* at 1416. Accordingly, the Chapter 7 trustee filing was untimely when made on May 3, 1990, since the Chapter 7 was subject to the Chapter 11 trustee's limitations period, which the court found terminated on May 2, 1990, not July 20, 1989—two years after the Chapter 11 had been filed.

The courts' second proposition, "relying upon the *Softwaire [Centre] International, Inc.* case, holding that section 546(a) applies to debtors in possession and commences to run from the date of the petition date," also incorrectly states, the admittedly confusing, state of the law regarding section 546(a) in the Ninth Circuit. The decision in *San Joaquin Roast Beef* was rendered by a three judge panel of the Ninth Circuit shortly after the Ninth Circuit's *en banc* decision in *Softwaire Centre.* Accordingly, the *San Joaquin Roast Beef* court was aware that under their own decision in *Softwaire Centre,* the limitations period in section 546(a) applies to debt-

ors in possession, and begins running against those debtors from the date of the filing of a petition for reorganization under Chapter 11. Nevertheless, as discussed directly above, the *San Joaquin Roast Beef* court held that the two-year statute of limitations began running upon the date the first trustee was appointed, not when the bankruptcy petition was filed. *Id.,* 7 F.3d at 1416. Having determined that both propositions underlying the courts' holdings are incorrect, it follows that the courts' holdings are themselves flawed.

This Court believes, however, that the Ninth Circuit's decisions, in *Softwaire Centre* and *San Joaquin Roast Beef,* which have been interpreted by a number of courts in the Ninth Circuit, resulting in conflicting opinions can be reconciled.[12] The apparent, and logical, explanation for the Ninth Circuit's decision in *San Joaquin Roast Beef* is that the *San Joaquin Roast Beef* court, without saying so, recognized that if a trustee has been appointed in a case, *Softwaire Centre* is inapposite.[13] Accordingly, the *San Joaquin Roast Beef* court rendered a decision interpreting section 546(a) on the facts presented. Hence, I believe the Ninth Circuit has itself limited *Softwaire Centre* to its facts.

For all the foregoing reasons, I conclude that a new two-year period commences upon the appointment of the first statutory trustee under any of the sections enumerated in section 546(a). Accordingly, the avoidance action filed by the instant Chapter 7 trustee is timely filed.

### III.

It is WSFS' position that under the (unamended) version of section 546(a)(1) applicable in this case, the statute of limitations commences upon the filing of a Chapter 11 petition against the debtor in possession, and a new two-year period does not recommence upon the appointment of the first statutory trustee. To construe section 546(a)(1) in that

---

12. In *In re Iron–Oak Supply,* the court interpreted *Softwaire Centre* and *San Joaquin Roast Beef* and concluded that in the Ninth Circuit there are two distinct two-year limitations periods for avoidance actions subject to section 546(a)(1). *Id.,* 162 B.R. at 306.

13. Interestingly, no mention of the *Softwaire Centre* decision is made in the *San Joaquin Roast Beef* decision. Apparently, even the defendant, the FDIC, recognized its inapplicability.

manner is to effectively read the "after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title" language out of the statute. That cannot be done. It is an "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative." *Colautti v. Franklin,* 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979); *see also, Coastal Group,* 13 F.3d at 84 n. 5. If WSFS was correct, section 546(a)(1) should read: An [avoidance proceeding] may not be commenced after the earlier of—(1) two years after the entry of the order for relief; or (2) the time the case is closed or dismissed, which, of course, it does not.

The Bankruptcy Reform Act of 1994, Pub.L. 103–394, § 216, 108 Stat. 4106, 4126–27 (1994) amends section 546 so that the amended version provides as follows:

> (a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
>
> (1) the later of—
>
> (a) two years after the entry of the order for relief; or
>
> (b) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (a); or
>
> (2) . . . .

Notably, the amended version provides the first appointed trustee with a one-year period to commence avoidance actions, if his appointment occurs within two years after the filing of a Chapter 11 petition.

▮ The amendment of section 546(a) and the policies it seems intended to promote may be taken into consideration by the Court in deciding on the correct interpretation of the statute here in question. *Farinash v. Nationsbank of Tennessee (In re John Hicks Oldsmobile–GMC Truck, Inc.),* 174 B.R. 81, 84 (Bankr.E.D.Tenn.1994); *see also Levin,* 175 B.R. at 577–78. The *John Hicks* court cogently justified the utilization of an amended statute in interpreting the current version of a statute, as follows:

In *Morgan Guaranty Trust Co. v. American Savings & Loan Ass'n,* 804 F.2d 1487 (9th Cir.1986), the court had to decide whether the automatic stay of § 362(a) was violated when a creditor, with knowledge of a bankruptcy, presented for collection certain notes made by the debtor. After both the filing of the bankruptcy petition and the presentation of the notes, Congress amended § 362 by adding a provision (now codified at § 362(b)(11)) which made it clear that such a presentment was not stayed by the operation of the statute. The Ninth Circuit took that amendment into consideration in deciding that the earlier version of § 362 similarly did not stay a presentment, [and said "o]ur conclusion that presentment did not violate the automatic stay prior to the enactment of subsection [362(b)(11)] is buttressed by the legislative history of the subsection. Congress intended the subsection to be a *clarifying amendment,* not a change in the law. Although such legislative history is not conclusive, we are entitled to give it weight when the meaning of the statute and original congressional weight are in doubt." *Id.,* at 1492 (emphasis added); *accord Andrus v. Shell Oil Co.,* 446 U.S. 657, 666 n. 8, 100 S.Ct. 1932, 1938 n. 8, 64 L.Ed.2d 593 (1980); *Seatrain Shipbuilding Co. v. Shell Oil Co.,* 444 U.S. 572, 596, 100 S.Ct. 800, 813–14, 63 L.Ed.2d 36 (1980) (views of a subsequent Congress cannot override the unmistakable intent of the enacting one, but they are entitled to "significant weight," particularly "when the precise intent of the enacting Congress is obscure.")

*In re John Hicks Oldsmobile–GMC,* 174 B.R. at 84 (emphasis added).

That section 216 of the Bankruptcy Reform Act of 1994 was intended by Congress to settle the controversy over the correct interpretation of section 546(a)(1) seems clear. In an analysis of the new legislation published in the Congressional Record in connection with the introduction of the bill (H.R. 5116) in the House of Representatives, two things are apparent: (1) that the amendment is intended to "clarify" existing law, and (2) that the rationale of the amendment is not concern for the trustee's freedom of action, but rather a definite limitation of the

time a creditor is at risk of avoidance actions. In pertinent part this analysis reads:

> This section "clarifies" section 546(a)(1) of the bankruptcy Code which imposes a 2–year statute of limitations *within which an appointed trustee must bring an avoidance action.* The purpose of a statute of limitations is to define the time that a party is at risk of suit. This section defines the applicable statute of limitations as 2 years from the entry of the order of relief or 1 year after the appointment of the first trustee if such appointment occurs before the expiration of the original 2–year period.

140 Cong.Rec. H10752–01 (daily ed. Oct. 4, 1994), 1994 WL 545773 (C.R.) (emphasis added).

The highlighted section of this analysis refers to the version of section 546(a)(1) applicable in the instant case, and provides a "2–year statute of limitations *within which an appointed trustee [, not a debtor in possession,]* must bring an avoidance action." *Id.* (emphasis added). Interestingly, the analysis also addresses WSFS' policy argument that the purpose of a statute of limitations is to provide specific time limits within which a potential defendant can be exposed to the risk of suit. In that regard, the amended version of section 546 limits the exposure of a potential defendant to a maximum period of almost three years, two years after the entry of the order for relief plus an additional one-year period if a statutory trustee is appointed before the expiration of the original 2–year period.

The Court believes that limiting a potential defendant's exposure to risk of suit to a two-year period following the appointment of the first statutory trustee provides the most balanced and equitable, albeit imperfect, approach to the competing policy interests at issue. As WSFS contends, a policy of protecting creditors from stale claims has considerable force in the context of preferences where there is no wrongdoing on the part of the creditor receiving payment. *See United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979). On the other hand, the interests of a debtor's estate, as well as the concomitant interests of that estate's creditors, must also be considered. Certainly, there are conceivable scenarios where a debtor in possession remains in control of its estate for periods far in excess of two years, and upon the subsequent appointment of a statutory trustee under my colleagues contrary decisions in *Levin* and *Nelson,* potential defendants are subject to significantly different periods of exposure to risk of an avoidance action.

In the instant case, however, WSFS has not suffered any undue exposure to the risk of suit upon a stale claim. The underlying bankruptcy case was commenced when the Debtor filed a voluntary petition under Chapter 11 on February 5, 1992. On October 19, 1992, the Court entered an order converting the Debtor's Chapter 11 case to a proceeding under Chapter 7. The trustee was appointed as an interim Chapter 7 trustee at the same time, and is currently serving as the permanent Chapter 7 trustee. The adversary proceeding was brought on July 20, 1994, more than two years after the Debtor filed the Chapter 11 petition, but within two years of the appointment of the Chapter 7 trustee. In total, WSFS was exposed to the risk of suit for approximately 27 to 28 months before the trustee filed the adversary underlying WSFS' instant Motion to Dismiss.[14] Under the version of section 546(a)(1) applicable in the instant case, the trustee's complaint was filed well within the two-year period available to the trustee. For all the foregoing reasons, WSFS' Motion to Dismiss the trustee's action as untimely shall be denied.

IV.

WSFS contends, alternatively, that the extended "insider-preference period"

---

**14.** The trustee's complaint would not be timely under the amended version of section 546, since the action was filed approximately 28 months after the bankruptcy was commenced. Nevertheless, the complaint was filed within the 3–year window of exposure to risk of suit which Congress considers reasonable under the Bankruptcy Reform Act of 1994, even in light of Congress' expressed policy that the rationale of the amendment is not concern for the trustee's freedom of action, but rather a definite limitation of the time a creditor is at risk of avoidance actions. *See* 140 Cong.Rec. H10752–01 (daily ed. Oct. 4, 1994), 1994 WL 545773 (C.R.).

should not be applied, and accordingly all claims to avoid transfers allegedly made more than ninety days before the bankruptcy petition was filed must be dismissed. The Third Circuit Court of Appeals has stated that the standard for this Court to follow in considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is:

> For purposes of a Fed.R.Civ.P. 12b(6) motion to dismiss for failure to state a claim upon which relief can be granted, we must accept all well pleaded allegations in the complaint as true and view them in the light most favorable to plaintiff. *Rogin v. Bensalem Township,* 616 F.2d 680, 685 (3d Cir.1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981); *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 444 (3d Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). We may not dismiss the complaint unless the plaintiff can prove no set of facts which would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

*Angelastro v. Prudential–Bache Securities, Inc.,* 764 F.2d 939, 944 (3d Cir.1985). A motion to dismiss under Fed.R.Civ.P. 12(b)(6) must be denied "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief". *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), citing *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989) ("the court ... [must] accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party"). *See also, Rose v. Bartle,* 871 F.2d 331, 342 (3d Cir.1989) (same). The burden of stating that no claim has been stated is on the movant. *Johnsrud v. Carter,* 620 F.2d 29 (3d Cir.1980).

In the instant case, WSFS contends that it is not an insider of the Debtor and so any transfer received by it more than 90 days prior to the Debtor's bankruptcy is not avoidable. WSFS also contends that the trustee

failed to identify the insider who benefitted from the transfers which the trustee has alleged occurred between ninety days and one year before the Debtor's bankruptcy filing.

■ The trustee pled sufficient facts from which it can be reasonably inferred that preferential transfers did occur within the extended insider-preference period. Moreover, the trustee's complaint does identify Walter Ball as the insider for whose benefit the alleged transfers were made. Accordingly, WSFS has not carried its burden to establish that no claim has been stated.

■ To the extent that WSFS suggests that this Court summarily reject that line of cases following *Levit v. Ingersoll Rand Financial Corporation,* 874 F.2d 1186 (7th Cir. 1989), the Court refuses to do so. The Court believes that *Deprizio,* and its progeny, provides the correct interpretation of sections 547 and 550, as they existed prior to the recent amendments.

For the foregoing reasons, WSFS' Motion to Dismiss all the claims to avoid transfers allegedly made more than ninety days before the bankruptcy petition was filed shall be denied.