In re VICTORY VEAL, INC., Debtor.

In re Marvin LICHT, Debtor.

M AND F HIDES AND SKINS CO., INC., M and F Hides and Skins Co., Inc., Pension Plan, Irving Gevirtzman and Simon Leiser, Plaintiffs,

v.

VICTORY VEAL, INC., Marvin Licht, Mrs. Marvin Licht, Great American Veal, Inc., Thomas Burke, and "John Doe", Defendants.

Bankruptcy Nos. 191–16176–260, 191–16177–260.
Adv. No. 192–1334–260.

United States Bankruptcy Court, E.D. New York.

Sept. 5, 1995.

Mandel & Mandel by Frederick H. Mandel, New York City, for plaintiffs.

Scherling, Davidson & Reich, P.C. by Kenneth J. Davidson, New York City, for debtors.

## DECISION ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEBTORS/DEFENDANTS' CROSS–MOTION TO EXPUNGE PLAINTIFFS' CLAIM

CONRAD B. DUBERSTEIN, Chief Judge.

In this adversary proceeding, Plaintiffs M and F Hides and Skins Co., Inc. ("M & F"), M and F Hides and Skins Co., Inc. Pension Plan ("M & F Pension"), Irving Gevirtzman ("Gevirtzman") and Simon Leiser ("Leiser") (collectively the "Plaintiffs")[1] seek to foreclose two mortgages ("Mortgages") they hold on property ("Property") owned by the Debtor/Defendant Victory Veal, Inc. ("Victory"). The four Plaintiffs are all payees of four mortgage notes ("Notes") aggregating $500,-000 secured by the aforesaid Mortgages.

Debtor/Defendant Marvin Licht ("Licht") was the president of Victory and together

1. M & F Pension Plan; Gevirtzman and Leiser are all affiliated with M & F.

with his wife, co-defendant Mrs. Marvin Licht ("Mrs. Licht"), owned 100 percent of Victory's issued and outstanding shares of stock. Although Victory is the record owner of the Property, the Property serves as the primary residence of Licht and Mrs. Licht. Thomas Burke ("Burke"), and his company, Great American Veal, Inc. ("Great American"), together with "John Doe" are also co-defendants in this adversary proceeding.

## PROCEDURAL HISTORY

Plaintiffs commenced a mortgage foreclosure action in the Supreme Court of the State of New York, County of Nassau by service of a summons and complaint upon the above-captioned defendants on March 28, 1991. On September 23, 1991, Victory and Licht (collectively "Debtors/Defendants") filed for protective relief under Chapter 11 of the Bankruptcy Code. The foreclosure action was removed to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1441 and, thereafter, upon the consent of the parties, transferred to this Court.

This matter comes before the Court upon the Plaintiffs' motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure,[2] made applicable to bankruptcy proceedings pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure for an order granting Plaintiffs a final judgment of foreclosure upon the Mortgages. The Debtors/Defendants oppose Plaintiffs' motion for summary judgment on the grounds of, *inter alia*, failure of consideration, and cross-move for an order expunging the Plaintiffs' claim.

Upon conclusion of the hearing held on said motion and cross-motion, this matter was taken under advisement. After deliberation and consideration of the facts and is-

sues raised herein, for the reasons hereinafter set forth, Plaintiffs' motion for summary judgment is granted and the Debtors/Defendants' cross-motion to expunge Plaintiffs' claim is denied.

## FACTUAL BACKGROUND

M & F is a New York corporation engaged in the business of purchasing veal skins from various commercial butchers and curing and reselling such skins to tanners. Great American, a New Jersey corporation engaged in the meat slaughtering and processing business, and Victory, which was formerly engaged in the wholesale meat distribution business, have supplied raw veal skins to M & F for many years. Burke is a principal of Great American.

Prior to 1986, M & F, in attempting to assist its supplier with its financial difficulties, made several loans to Great American. By June of 1986, Great American's indebtedness to M & F on an outstanding $200,000 secured loan was reduced to $130,000 ("Great American's pre-existing debt").[3]

The Plaintiffs claim that in or about June, 1986, Licht asked M & F for a $500,000 loan (the "Loan"), informing M & F that he was merging Victory's business operations with Great American and that he would be a "partner" or "co-owner" of the anticipated merged entity. Indeed, the symbiotic relationship of the two entities was reflected by the operation of Victory's business out of Great American's premises and the transfer of all of Victory's assets and customers to Great American in anticipation of the merger.[4]

Plaintiffs further claim that Licht stated that the Loan proceeds would be invested in Great American, with $130,000 applied to

---

**2.** Fed.R.Civ.P. 56(c) provides in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

**3.** Affidavit of Irving Gevirtzman submitted in support of Plaintiffs' motion for summary judgment ("Gevirtzman Affidavit"), at ¶ 5.

**4.** Affidavit of Marvin Licht submitted in opposition to Plaintiffs' motion for summary judgment and in support of cross-motion ("Licht Affidavit"), at ¶ 4; April 16, 1993 Deposition of Marvin Licht ("Licht Deposition"), at p. 9.

satisfy Great American's pre-existing debt,[5] and that Licht offered to secure such Loan with a mortgage on his home, the title of which was held in the name of his corporation, Victory.[6]

In addition to Great American's pre-existing debt, on June 13, 1986, M & F issued three checks aggregating $200,000 to Great American (the "Great American Loan"). Although the characterization of the Great American Loan is in contention, as more fully discussed *infra*, the determination of that issue is not dispositive of the instant proceedings.

In support of his defense to the Loan and Mortgages, Licht states that he never personally approached the Plaintiffs for the purpose of advancing monies for Great American's benefit and never participated in the Loan negotiations. He claims, rather, that he was advised by his accountant who also represented Burke, that M & F was willing to loan money to or for the benefit of Great American if Licht participated in such loan transaction.[7]

Licht claims that the purpose of the Loan was specifically to cause "an infusion of $500,000 of operating capital into Great American,"[8] and now denies consenting to or having knowledge of the application of the Loan proceeds to satisfy Great American's preexisting debt of $130,000 or any other obligation incurred by Great American to M & F.

Notwithstanding the disputed issue of why the Loan was made, on June 19, 1986, as evidence of its $500,000 indebtedness to M & F, Victory, by its president Licht, executed as "maker" and Licht and Burke each individually executed as "co-maker" the following four Notes in the following amounts and in favor of the following parties:

| | |
|---|---|
| M & F Pension: | $115,000 |
| M & F: | $335,000 |
| Gevirtzman: | $ 20,000 |
| Leiser: | $ 30,000 |
| TOTAL | $500,000 |

To secure the above indebtedness, Victory, as record owner of the Property, by its president Licht, simultaneously executed and delivered two Mortgages in the following amounts and in favor of the following parties:

| | |
|---|---|
| M & F, and | |
| M & F Pension: | $115,000 |
| Gevirtzman and Leiser: | $385,000 |
| TOTAL | $500,000 |

A closing statement (the "Closing Statement") was issued by M & F's attorneys which detailed the June 19, 1986 Loan closing and indicated, *inter alia*, that the first $335,000 of the $500,000 proceeds of the Loan was disbursed as follows:

1) $125,000 was applied to Great American's pre-existing debt to M & F;

2) $5,800 was applied to interest on Great American's preexisting debt to M & F;

3) $200,000 was to applied to the Great American Loan;

4) $4,200 was applied to closing costs.

The $165,000 balance of the Loan proceeds was disbursed in three checks, as reflected by copies of the checks annexed to Plaintiffs' moving papers[9] and were for the following amounts and made payable to the following parties:

1) Check for $115,000 (the amount of the M & F Pension Plan Note) payable to Victory, endorsed by Victory to Great American and deposited by Great American;

2) Check for $30,000 (the amount of the Leiser Note) payable to Leiser, endorsed by Leiser to Great American and deposited by Great American; and

---

5. Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment, at p. 2.

6. Gevirtzman Affidavit, at ¶ 6.

7. Accordingly to Licht, M & F was not inclined to advance funds to Great American without Licht's participation because of the uncertainty of Great American's future as a result of a federal investigation and indictment of Burke. During this time, Burke was unable to properly manage

Great American's business because he was prohibited from using his Department of Agriculture "Stamp." Licht Affidavit, at ¶ 4.

8. Licht Affidavit, at ¶ 11.

9. Exhibit "B" to Frederick Mandel's Affidavit in support of Plaintiffs' motion for summary judgment and in opposition to Defendants' cross-motion.

3) Check for $20,000 (the amount of the Gevirtzman Note) payable to Gevirtzman, endorsed by Gevirtzman to Great American and deposited by Great American.

From June 1986 through August 1989, Licht made interest and principal payments on the Loan until he defaulted in October of 1989. On November 15, 1989, in accordance with the terms of the Notes, Plaintiffs made a written demand upon Licht to pay the remaining outstanding balance of the Loan, which, at that time amounted to $254,000. Plaintiffs assert that the demand was unprotested and unanswered.

As indicated above, Plaintiffs commenced a mortgage foreclosure action on March 28, 1991. In their answer, the Debtors/Defendants assert that the Loan and Mortgages are invalid for reasons of lack of consideration including:

1) The application of the Loan proceeds to the $200,000 Great American Loan was not the consideration Licht bargained for;

2) The application of the Loan proceeds to interest and principal on Great American's pre-existing debt ($125,000 plus accrued interest of $5,800) was not the consideration Licht bargained for; and

3) M & F did not satisfactorily document that the $165,000 balance went to Great American for the purpose of an infusion of operating capital.

In sum, the Debtors/Defendants contend that the Mortgages placed on the Property were a part of a "sham transaction" to which they received no consideration; no operating capital was remitted to Great American; and that Debtors/Defendants were wrongfully substituted as obligors on Great American's pre-existing obligations to M & F in the sum of $335,000.

Plaintiffs contend that by virtue of the existence of the debt as evidenced by the Notes, the security of the simultaneous Mortgages, and the Debtors/Defendants' default, summary judgment granting permission to foreclose is proper as a matter of law. According to Plaintiffs, the Loan and Mortgages were simply part of a global agreement through which Licht borrowed from M & F to satisfy previously existing debt owed by Great American to M & F, as well as to provide operating capital to Great American, all of which benefited Licht as a "co-owner" of that company.

## DISCUSSION

Summary judgment is appropriate when the Court determines that " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)); *see also Skouras v. United States,* 26 F.3d 13, 14 (2d Cir.1994); *Bank of India v. Sapru (In re Sapru),* 127 B.R. 306, 319 (Bankr.E.D.N.Y.1991).

■ " 'The moving party has the burden of demonstrating the absence of any genuine issue of material fact, but all inferences as to the underlying facts must be viewed in the light most favorable to the party opposing the motion.' " *Pereira v. Lehigh Sav. Bank, SLA (In re Artha Mgmt.),* 174 B.R. 671, 675 (Bankr.S.D.N.Y.1994) (quoting *In re Thomson McKinnon Sec. Inc.,* 132 B.R. 9, 11 (Bankr.S.D.N.Y.1991)); *see also Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986) *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

■ The non-moving party may oppose a summary judgment motion by showing that there is a genuine issue as to a material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Adwar v. Capgro Leasing Corp. (In re Adwar),* 55 B.R. 111 (Bankr.E.D.N.Y.1985) (finding existence of factual issues regarding mortgage foreclosure sale precluded issuance of summary judgment). This Court recognizes, however, that " 'the mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party.' " *Ansam Assocs. v. Cola Petroleum, Ltd.,* 760 F.2d 442, 446 (2d

Cir.1985) (quoting *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980)). Thus, the opposing party may not merely rely upon the contentions of its pleadings, but must produce significant evidence to support its position by bringing to the attention of the Court some favorable indication that its version of relevant events is not a meritless allegation. *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978).

█ Under New York law, the essential elements of a mortgage foreclosure action are: (1) the existence of a debt, (2) which is secured by a mortgage, and (3) a default on that obligation. *See United States v. Freidus,* 769 F.Supp. 1266, 1277 (S.D.N.Y.1991) (citing *Northeast Savings, F.A. v. Rodriguez,* 159 A.D.2d 820, 553 N.Y.S.2d 490 (3d Dep't 1990)); *see also New York State Mortgage Loan Enforcement and Admin. v. North Town Phase II Houses,* 191 A.D.2d 151, 594 N.Y.S.2d 183 (1st Dep't 1993) (granting foreclosure upon production of notes, mortgage, consolidated agreements and statements evidencing that obligations had not been discharged).

█ As observed by the *Freidus* court, "a mortgagor is bound by the terms of his contract as made and cannot be relieved from his default, if one exists, in the absence of waiver by the mortgagee, or estoppel, or bad faith, fraud, oppressive or unconscionable conduct on the latter's part." *Freidus,* 769 F.Supp. at 1276 (citing *Nassau Trust Co. v. Montrose Concrete Products Corp.*, 56 N.Y.2d 175, 183, 436 N.E.2d 1265, 451 N.Y.S.2d 663 (1982)).

█ Thus, where the foregoing elements of a mortgage foreclosure action are established, the mortgage holder has a "presumptive right to collect which, can only be overcome by an affirmative showing from the defendant." *Freidus,* 769 F.Supp. at 1277.

Plaintiffs have shown through presentation of the Notes executed by Licht, in his capacity as president of Victory as maker, and by Licht and Burke, individually as co-makers,

that a debt in fact existed. Plaintiffs have further established that this debt was secured by two Mortgages on Licht's personal residence as evidenced by the Mortgages executed by Licht, in his capacity as president of Victory, the record owner of the Property. Finally, Plaintiffs have proven that despite several demands for payment, Victory and Licht defaulted on this debt, by failing to make additional payments after October of 1989 after written demand therefor.[10] Thus, under New York law, Plaintiffs have presented a *prima facie* case for foreclosure.

█ "A claimant is entitled to a summary judgment only when no genuine issue of material fact exists, the papers on the motion demonstrate his right to relief, and every one of the defenses asserted legally are insufficient." 10A *Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure* § 2734 (1983) (citations omitted). "However, since a single valid defense may defeat recovery, claimant's motion for summary judgment should be denied when any defense presents significant fact issues that should be tried." *Id.* (citing *Redman Indus., Inc. v. Tower Properties, Inc.*, 517 F.Supp. 144 (D.C.Ga.1981) (precluding summary judgment on a foreclosure action due to the existence of a substantial issue of material fact)) (other citations omitted). Thus, the Court now turns to examining the affirmative defenses asserted by the Debtors/Defendants to determine whether they present fact issues sufficient to defeat Plaintiffs' summary judgment motion.

I. *The Parol Evidence Rule is a Complete Bar to the Debtors/Defendants' Claim that the Mortgages were Merely Guarantees to Pay the Debt of Great American to M & F.*

█ The Debtors/Defendants claim, as an affirmative defense, that the Mortgages were not given as security for the Notes, but were mere guarantees of Great American's preexisting debt to M & F. (Amended Answer, ¶ 13). Any evidence they seek to introduce

**10.** Exhibit "D" to the Gevirtzman Affidavit submitted in support of Plaintiffs' motion for sum-

mary judgment.

on this issue, however, is inadmissible by operation of the parol evidence rule.

It is well-settled that extrinsic or parol evidence is inadmissible to contradict the unambiguous meaning of a mortgage and mortgage note. *Carver Federal Sav. and Loan Ass'n of New York v. Glanzer*, 186 A.D.2d 706, 707, 588 N.Y.S.2d 905, 907 (2d Dep't 1992); *CrossLand Savings, FSB v. Loguidice–Chatwal Real Estate Inv. Co.*, 171 A.D.2d 457, 567 N.Y.S.2d 39, 40 (1st Dep't 1991). As a threshold matter, whether a contract term is ambiguous is a question of law to be resolved by the court. *See Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 149 (2d Cir.1993). This decision is made by reference to the Mortgages and Notes alone. *See e.g.*, *Burger King Corp. v. Horn & Hardart Co.*, 893 F.2d 525, 527 (2d Cir. 1990); *Namad v. Salomon Inc.*, 74 N.Y.2d 751, 753, 545 N.Y.S.2d 79, 80, 543 N.E.2d 722, 723 (1989). "Parol evidence is inadmissible if a contract is clear on its face and sufficient alone to divine the intent of the parties." *Namad*, 545 N.Y.S.2d at 80, 543 N.E.2d at 723.

However, "[s]training a contract's language beyond its reasonable and ordinary meaning does not create an ambiguity." *Brass*, 987 F.2d at 149. *See also Mount Vernon Fire Ins. Co. v. Creative Housing Ltd.*, 797 F.Supp. 176, 179 (E.D.N.Y.1992) (contract term not ambiguous simply because parties urge opposite interpretations).

Here, the Notes and Mortgages admit of only one reasonable interpretation, to wit, Victory, as maker, by its president Licht, and Licht and Burke as co-makers, promised to pay $500,000 to M & F, and Victory, by its president Licht, pledged the Property as security for the Notes. There is absolutely no mention of Great American in either the Notes or the Mortgages. Further, there is no language in the Mortgages that may reasonably be read as a guarantee.

The terms of the Mortgage given to M & F and M & F Pension explicitly state that it was given "to secure the payment of an indebtedness of ONE HUNDRED FIFTEEN THOUSAND 00/100 ($115,000.00)

lawful money of the United States, to be paid on June 1, 1991, or within thirty (30) days after sooner demand...."

The terms of the Mortgage given to Gevirtzman and Leiser were identical to the M & F and M & F Pension Mortgage, except that the debt secured by that Mortgage is $385,000. Not coincidentally, these sums correspond exactly with the debts evidenced by the Notes. The Mortgage terms unambiguously require that the mortgagor [Victory] pay a sum certain on or before June 1, 1991, in monthly installments. This is a direct obligation of Victory to the mortgagees, and there is no language in either the Notes or Mortgages to suggest that it is contingent upon the occurrence or non-occurrence of an act by a third party. Such clear and unequivocal language may not be contradicted by parol evidence of the parties' pre-execution intent. *Home & City Sav. Bank v. Bilinski*, 177 A.D.2d 73, 75, 580 N.Y.S.2d 561, 562 (3d Dep't 1992).

Finally, Licht expressly denied any knowledge of Great American's pre-existing debt owing to M & F prior to the time he executed the Notes and Mortgages.[11] This is the very same debt that he now claims he intended to guarantee by giving the mortgages. Thus, it is unreasonable for this Court to conclude that Licht subjectively intended to guarantee a debt of which he was unaware at the time the Notes and Mortgages were executed and delivered.

Hence, the Debtors/Defendants are barred by the parol evidence rule from introducing evidence that the mortgages were intended as a mere guarantee of Great American's pre-existing debt to M & F.

II. *The Mortgage Debt Was Supported By Valuable Consideration*

The Debtors/Defendants also seek to avoid the instant motion by raising the affirmative defense of failure of consideration. (Amended Ans. ¶¶ 11–12). However, each Note prominently displays the language "FOR VALUE RECEIVED." This language is evidence that there was consideration flowing to Victory, Licht and Burke for

---

**11.** Licht Deposition, p. 23–24.

making the notes. *Crumbliss v. Swerdlow*, 158 A.D.2d 502, 551 N.Y.S.2d 265 (2d Dep't), *appeal denied*, 75 N.Y.2d 710, 556 N.Y.S.2d 532, 555 N.E.2d 929 (1990).

This Court finds that there was good and sufficient consideration coming to the Debtors/Defendants from Great American for executing the Notes, namely, at the time of the Loan negotiations Licht had an agreement to "work ... with" Great American and become a shareholder in that corporation.[12] Licht testified that the purpose of the Loan was to invest money into Great American so that it would become a success. Therefore, he had a legitimate and foreseeable financial incentive to execute the Notes and cause Victory to pledge the Property as security for the loan, namely, if Great American was successful, the mortgagor would be successful as well.

Additionally, although Licht claims he never became a shareholder of Great American, this Court notes the existence of an "output agreement," simultaneously executed with the Notes and Mortgages, under which Great American committed to sell of all its veal skins to M & F. As further indication of Licht's involvement with Great American, page two of the aforesaid "output agreement" reflects that 100 percent of Great American's stock was owned by Licht and Burke. It is abundantly clear to this Court that Licht, as a shareholder of Great American would benefit as a third party to the Loan transaction from the infusion of capital into that company.

Where the maker of a Note is contractually entitled to receive a benefit from a third party, that right is sufficient consideration for the maker to execute the Note for the benefit of that third party. *See Benderson Dev. Co., Inc. v. Hallaway Properties, Inc.*, 115 A.D.2d 339, 495 N.Y.S.2d 820, 821 (4th Dep't 1985), *aff'd*, 67 N.Y.2d 963, 502 N.Y.S.2d 1001, 494 N.E.2d 106 (1986).

Debtors/Defendants' claim of failure of consideration based upon the application of $335,000 of the Loan proceeds to Great American's pre-existing debt and to Great American's Loan is equally unavailing. Despite Licht's claim that he did not see the Closing Statement which details the consideration for the Notes and Mortgages he executed on June 16, 1986 and that he was unaware of the disposition of the Loan proceeds, Licht attended the closing. It is inconceivable to this Court that Licht, who is a colleged-educated self-employed businessman, had no concept of the disbursement of the $500,000 Loan proceeds, the payment of which was secured by Mortgages upon his personal residence.

Debtors/Defendants also assert that the consideration bargained for, viz., the infusion of operating capital into Great American was not complied with because they claim no monies from the Loan proceeds was remitted to Great American. However, as indicated above and as reflected by copies of the pertinent checks annexed to Plaintiffs' moving papers, the $165,000 balance of the Loan proceeds was deposited into Great American's account.

Thus, the Debtors/Defendants' affirmative defense of failure of consideration is hereby rejected.

### III. *M & F Did Not Misapply Loan Payments.*

As a fifth affirmative defense, the Debtors/Defendants also contend that M & F misapplied payments made by Great American to a debt incurred by Great American other than the Mortgage debt. (Amended Ans. ¶ 17). Firstly, Debtors/Defendants have failed to submit any evidence to support this allegation and, for purposes of the instant motion, merely rely upon this vague contention in their pleading. This is insufficient to defeat a motion for summary judgment. *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978). "[Debtors/Defendants] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Notwithstanding the foregoing, under New York law M & F has a right to

---

12. Licht Deposition, at p. 28–30.

apply Note payments in any manner it sees fit unless directed otherwise. *In re Earl,* 147 B.R. 60, 66 (Bankr.N.D.N.Y.1992) (citing *Bilinski,* 580 N.Y.S.2d at 563). There was no evidence submitted which indicated that the Debtors/Defendants directed any of their payments be applied to a specific debt. Thus, this affirmative defense fails to raise a genuine issue of material fact.

IV. *This Action Is Not Barred By The Doctrine Of Laches.*

██ Further, the Debtors/Defendants raise the affirmative defense of laches as a bar to this action. (Amended Ans. ¶ 19). It is well settled, however, that laches is no defense to a foreclosure action brought within the applicable statute of limitations. *See, e.g., Wesselman v. Engel Co.,* 309 N.Y. 27, 32, 127 N.E.2d 736 (1955); *New York State Mortg. Loan Enforcement and Admin. Corp. v. North Town Phase II Houses, Inc.,* 191 A.D.2d 151, 152, 594 N.Y.S.2d 183, 184 (1st Dep't 1993). The default on the Mortgage debt occurred in 1989. Inasmuch as M & F commenced the instant action on March 28, 1991, it is abundantly clear that said action was brought well within the six-year statute of limitations applicable to mortgage foreclosure actions.[13] Thus, the Debtors/Defendants' affirmative defense based upon laches does not create a genuine issue of material fact.

In sum, this Court finds that Plaintiffs have established by documentary evidence both the facts underlying their foreclosure cause of action and the lack of any triable issue of fact. To successfully withstand Plaintiffs' motion, Debtors/Defendants were bound to demonstrate a bona fide defense to the Mortgages. This has not been done inasmuch as the papers submitted in opposition failed to present evidentiary facts showing the existence of a genuine and substantial issue. In the absence of such an evidentiary showing, Plaintiffs' motion for summary judgment is granted.

*CONCLUSIONS*

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(A) and (O).

2. Plaintiffs' motion for summary judgment is GRANTED.

3. Debtors/Defendants' motion to expunge Plaintiffs' claim is DENIED.

SETTLE AN ORDER CONSISTENT WITH THIS OPINION.

---

**13.** Section 213[4] of the Civil Practice Law and Rules provides that "an action upon a bond or note, the payment of which is secured by a mortgage upon real property, or upon a bond or note and mortgage so secured, or upon a mortgage of real property, ..." must be commenced within six years.