In re DARTCO, INC., d/b/a Stockmen's Truck Stop, Debtor.

Molly T. SHIELDS, Trustee of the Estate of Dartco, Inc., d/b/a Stockmen's Truck Stop, Plaintiff,

v.

CREL, INC., Defendant.

Bankruptcy No. 3–91–416.
Adv. No: 3–95–002.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Dec. 9, 1996.

Timothy J. Ewald, Minneapolis, MN, for Plaintiff/Trustee.

Garrett M. Vail, Minneapolis, MN, for Defendant CPI.

ORDER GRANTING MOTION OF PLAINTIFF FOR LEAVE TO FILE AMENDED COMPLAINT AND DENYING MOTION OF CREL PETROLEUM, INC. FOR DISMISSAL AND FOR IMPOSITION OF SANCTIONS

GREGORY F. KISHEL, Bankruptcy Judge.

This adversary proceeding came on before the Court for hearing on the motion of Crel Petroleum, Inc. ("CPI") for dismissal and for imposition of sanctions, and upon the Plaintiff's motion for leave to file an amended complaint and to join additional parties-defendant. CPI appeared by its attorney, Garrett M. Vail. The Plaintiff appeared personally and by her attorney, Timothy J. Ewald. Upon the moving and responsive documents and the arguments of counsel, the Court makes the following order.

## NATURE OF PROCEEDING

Though the Debtor's case was commenced as one under Chapter 11, it is presently pending as one for liquidation under Chapter 7. The Plaintiff is the trustee of the Debtor's Chapter 7 estate. She commenced suit against the named Defendant seeking relief under two theories of recovery.

In Count I of her complaint, she alleged that the named Defendant had received payments by check from the Debtor within 90 days of the commencement of the Debtor's Chapter 11 case, which were avoidable as preferential transfers within the contemplation of 11 U.S.C. § 547(b). To effectuate the avoidance, she requested a money judgment against the named Defendant in "at least the amount of $279,123.07", plus such other amounts as she could prove at trial, and "prejudgment interest from the date of the filing of the Complaint" in these adversary proceedings.

In Count II, the Plaintiff alleged that, shortly after the Debtor's Chapter 11 filing, the named Defendant had received funds in the amount of $81,281.18 or more, when the Debtor's bank honored checks that the Debtor had issued immediately before or immediately after its Chapter 11 filing. All of these transfers were made in payment for prepetition deliveries of petroleum products to the Debtor. The Plaintiff alleged that the transfers identified in Count II were unauthorized post-petition transfers of the Debtor's assets, avoidable under 11 U.S.C. § 549. She requested a money judgment in the stated amount, or such greater amount as she proved at trial, to effectuate such an avoidance.

## MOTIONS AT BAR

An entity calling itself "Crel Petroleum, Inc." filed the first motion at bar. In the text of the motion, CPI "contends that it is the real party defendant in interest," and seeks dismissal of the Plaintiff's complaint. It argues several alternative theories to support this request:

1. 11 U.S.C. § 546(a) bars this proceeding because it was not commenced within two years of the commencement of the Debtor's Chapter 11 case.

2. 11 U.S.C. § 546(a) bars this proceeding because it was not commenced within two years of the date on which a disbursing agent, denominated as a "trustee" under the Debtor's confirmed plan, formally assumed that status.

3. The complaint is time-barred under the terms of the order that the Court entered to confirm the Debtor's Fourth Amended Plan of Reorganization, before the case was converted to one under Chapter 7.

4. The doctrines of laches and/or estoppel bar the bankruptcy estate from now prosecuting this proceeding against CPI, given the estate's failure to commence it earlier in either phase of the underlying case.

In addition, CPI raises a fifth defense against Count III of the Plaintiff's complaint:

5. Because the terms of the Debtor's confirmed plan do not preserve causes of action under § 549 in favor of the reorganized debtor and its creditors, the Plaintiff lacks standing to sue anyone under that statute.

Maintaining that the procedural history of the case unequivocally establishes that the Plaintiff had no right to commence this proceeding, CPI seeks the imposition of sanctions on the Plaintiff pursuant to FED. R.BANKR.P. 9011.

Shortly after CPI filed its motion, the Plaintiff filed a motion for leave to amend her complaint, to add CPI and another party named "Crel Investments, Inc." ("CII") as additional parties-defendant, pursuant to FED.R.BANKR.P. 7015(a), 7015(c), and 7018(a). As the grounds for allowing such relief, the Plaintiff states:

The [Plaintiff's] failure to join the proper named corporations at the time of the filing of the original Complaint is justified because the defendant [sic] Crel Petroleum, Inc. and Crel Investments, Inc. issued invoices in the name of Crel, Inc., without regard to corporate formalities.

After that—and on the day before the scheduled hearing—the Plaintiff filed a response to CPI's motion, strenuously opposing it.

## PROCEDURAL HISTORY OF UNDERLYING BANKRUPTCY CASE

To support its motion, CPI relies mainly on the procedural history of the Debtor's bankruptcy case, in both of its phases.

The Debtor filed a petition for relief under Chapter 11 on January 24, 1991. In August, 1991, the Debtor's Committee of Unsecured Creditors moved in the alternative for appointment of a trustee or an examiner pursuant to 11 U.S.C. § 1104. The parties produced substantial evidence on the motion. Via an order entered on September 13, 1991, the Court declined to grant the relief requested. After protracted and involved confirmation proceedings, the Court confirmed what the Debtor styled as a "Modified Fourth Amended Plan" of reorganization on July 17, 1992.

The Court ordered the Debtor to comply with certain formalities to evidence the substantial consummation of the plan. Even after the Court granted an extension of the deadline, the Debtor did not comply. The Court entered an Order to Show Cause to ascertain the reasons for the delay; almost simultaneously, the U.S. Trustee served a motion for conversion of the case. On January 13, 1993, the Court granted the U.S. Trustee's motion and converted the case to one under Chapter 7.

On January 15, 1993, the United States Trustee appointed the Plaintiff as Trustee of the Debtor's Chapter 7 estate. On January 4, 1995, she filed the complaint that commenced this adversary proceeding.

## DISCUSSION

The motions at bar raise a half-dozen issues, which should be treated separately and *seriatim.*

### I. The Plaintiff's Motion

■ The Plaintiff seeks leave to amend her complaint pursuant to FED.R.CIV.P. 15(a), *as incorporated by* FED.R.BANKR.P. 7015.[1]

---

1. The relevant text of the former rule is:

... a party may amend the party's pleading only by leave of court or by written consent of

The proposed amendments add CPI and CII as parties-defendant to this adversary proceeding. In explanation of this change, the Plaintiff alleges at ¶¶ 5 through 7 of her amended complaint:

5. Upon information and belief, Defendant Crel, Inc. is or was a Minnesota corporation and does business in the State of Minnesota or was the name used by Defendants Crel Petroleum, Inc. and Crel Investments, Inc. for some or all of their business operations in Minnesota.

6. Defendant Crel Petroleum, Inc. is a Minnesota corporation.

7. Defendant Crel Investments, Inc. is a Minnesota corporation.

The Plaintiff goes on to state her belief that all of the proposed named Defendants sold petroleum products, "individually or collectively," to the Debtor during 1990 and 1991, and that "one or all of the Defendants" received the benefit of the preferential transfers at issue. She attributes her identification of the named Defendant in her original complaint to the fact that "Crel, Inc." was the style under which most of the subject invoices were issued to the Debtor.

CPI has not objected to the Plaintiff's motion. Under the circumstances, it was well-put not to do so; it appears that the Plaintiff's prior imprecision in framing her complaint is attributable to earlier imprecision in the way the named Defendant and/or the proposed new Defendants held itself or themselves out to customers, including the Debtor. Justice clearly requires a grant of leave to amend.

■ Further, the circumstances satisfy FED.R.CIV.P. 15(c), *as incorporated by* FED.R.BANKR.P. 7015.[2] All of the claims that would be brought against CPI and CII arise from the same facts pleaded against Crel, Inc. CPI does not allege that it would be prejudiced in its options for litigation, and clearly would not be. Finally, CPI admits that it is the appropriate party-defendant, or at least is one of them. The allegations of the amended complaint, then, are deemed to relate back to the date of the Plaintiff's original complaint, for all substantive and procedural purposes.

## II. CPI'S MOTION

### A. Nature of Motion.

■ CPI styled its motion as one for dismissal under FED.R.CIV.P. 12(b)(6), *as incorporated by* FED.R.BANKR.P. 7012(b).[3] Both parties, however, made reference to various attached exhibits, and to events other than those pleaded within the four corners of the Plaintiff's complaint. The motion, then, must be treated as one for summary judgment. FED.R.CIV.P. 12(c), *as incorporated by* FED.R.BANKR.P. 7012(b).[4] The parties correctly agree that there is no genuine issue of material fact as to any of the issues raised by

the adverse party; and leave shall be freely given when justice so requires.

2. The relevant provisions of the former rule are: An amendment of a pleading relates back to the date of the original pleading when

 (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleadings, or

 (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the property party, the action would have been brought against the party.

3. The former rule provides that a request for dismissal for "failure to state a claim upon which relief can be granted" may be brought by answer or via motion, at the option of the party asserting the defense.

4. In pertinent part, this rule provides:

 If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in [FED.R.CIV.P.] 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by [FED.R.CIV.P.] 56.

CPI's motion, and that they present only questions of law amenable to summary adjudication. FED.R.CIV.P. 56(c),[5] *as incorporated by* FED.R.BANKR.P. 7056.

B. Section 546(a) Statute of Limitation: Seating of Debtor in Possession at Commencement of Chapter 11 Case.

■ For its main argument, CPI maintains that this adversary proceeding is time-barred by 11 U.S.C. § 546(a),[6] because the Debtor failed to commence it within two years after it filed for reorganization under Chapter 11.[7] As CPI would have it, 11 U.S.C. § 1107(a) makes a debtor in possession in reorganization the "functional equivalent" of the trustee to whom reference is made in § 546(a)(1). In any event, it argues, § 546(a), as a "limitation on a trustee serving in a case under" Chapter 11, is applicable to a debtor in possession as soon as it is invested with that status by the filing of its petition for reorganization.[8]

The majority of circuit courts that have addressed this issue under the pre-1994 language of § 546(a) have adopted CPI's position. *See IRFM, Inc.,* 65 F.3d 778, 780 (9th Cir.1995), reconciling *In re San Joaquin Roast Beef,* 7 F.3d 1413 (9th Cir.1993) and *In re Softwaire Centre Int'l., Inc.,* 994 F.2d 682 (9th Cir.1993); *In re McLean Indust., Inc.,* 30 F.3d 385, 387 (2d Cir.1994) and *In re Century Brass Prod., Inc.,* 22 F.3d 37, 39–40 (2d Cir.1994); *In re Coastal Group Inc.,* 13 F.3d 81, 86 (3d Cir.1994); *Zilkha Energy Co. v. Leighton,* 920 F.2d 1520, 1524 (10th Cir. 1990). Under the broadest form of this rationale, the inaction of a debtor in possession can extinguish all avoidance causes of action, to the prejudice of a later-appointed trustee. This is the theory that CPI urges.

The Fourth Circuit, however, has reached the opposite conclusion. *In re Maxway Corp.,* 27 F.3d 980, 983–984 (4th Cir.1994) (holding that post-confirmation preference action by unsecured creditors committee brought pursuant to plan was not barred by failure of debtor to exercise avoidance remedy in first two years of Chapter 11 case). In doing so, it relied explicitly on the "plain language" approach favored by the Supreme Court in its recent bankruptcy jurisprudence,[9] and noted that the investiture of debtor-in-possession status by operation of law does not happen under any of the sec-

---

5. In pertinent part, this rule provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

6. As it read in 1991, the text of this statute is:

> An action or proceeding under [11 U.S.C. §§] 544, 545, 547, 548, or 553 .... may not be commenced after the earlier of—
> (1) two years after the appointment of a trustee under [11 U.S.C. §§] 702, 1104, 1163, 1302, or 1202 ... or
> (2) the time the case is closed or dismissed.

In the Bankruptcy Reform Act of 1994, Congress amended this provision, to address the very problem at bar. *See* PUB.L. No. 103–394, § 216, 108 Stat. 4106, 4127. Because this case was commenced before that enactment, however, the earlier language applies. *See* PUB.L. No. 103–394, § 702(b), 108 Stat. at 4150.

7. CPI's counsel did not brief this variant on his time-barring theory, but he did present it in passing at oral argument.

8. Section 1107(a) provides, in pertinent part:

> Subject to any limitations on a trustee serving in a case under [C]hapter [11], and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties, ... of a trustee serving in a case under [C]hapter [11].

In turn, § 1101(1) defines "debtor in possession" as "debtor except when a person that has qualified under [11 U.S.C. §] 322 ... is serving as trustee in the case ..."

9. *E.g., Rake v. Wade,* 508 U.S. 464, 472–473, 113 S.Ct. 2187, 2192–2193, 124 L.Ed.2d 424 (1993); *Patterson v. Shumate,* 504 U.S. 753, 758, 112 S.Ct. 2242, 2246, 2247, 119 L.Ed.2d 519 (1992); *Taylor v. Freeland & Kronz,* 503 U.S. 638, 642, 112 S.Ct. 1644, 1647–1648, 118 L.Ed.2d 280 (1992); *Barnhill v. Johnson,* 503 U.S. 393, 395–400, 112 S.Ct. 1386, 1388–1391, 118 L.Ed.2d 39 (1992); *U.S. v. Nordic Village, Inc.,* 503 U.S. 30, 32–37, 112 S.Ct. 1011, 1014–1016, 117 L.Ed.2d 181 (1992); *Union Bank v. Wolas,* 502 U.S. 151, 160–162, 112 S.Ct. 527, 533, 116 L.Ed.2d 514 (1991); *Toibb v. Radloff,* 501 U.S. 157, 160–161, 111 S.Ct. 2197, 2199–2200, 115 L.Ed.2d 145 (1991); *Hoffman v. Connecticut Dept. of Income Maintenance,* 492 U.S. 96, 101–102, 109 S.Ct. 2818, 2822–2823, 106 L.Ed.2d 76 (1989) (plurality opinion). *Contra, Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

tions specifically enumerated in § 546(a)(1). *Id.*[10]

The Eighth Circuit has not addressed this narrow issue. In *McCuskey v. Central Trailer Serv., Ltd.*, 37 F.3d 1329 (8th Cir. 1994), however, it applied the pre–1994 language of § 546(a)(1) to a somewhat different set of facts. In *McCuskey,* an operating trustee had been appointed pursuant to 11 U.S.C. § 1104, before the debtor's Chapter 11 case was converted to one for liquidation and a Chapter 7 trustee was appointed. The defendant argued that the Chapter 7 trustee's preference action was time-barred because it had not been commenced within two years of the appointment under § 1104. The Chapter 7 trustee argued that the enumeration of statutory sections in § 546(a)(1) meant that a new limitations period commenced with each appointment under any of them. The Eighth Circuit agreed with the defendant.

The precedential holding in *McCuskey* is necessarily limited to its facts. Nonetheless, in rejecting the trustee's argument, the Eighth Circuit more generally identified the signal event that commences a limitations period under that section:

> In our view, the disjunctive language [of § 546(a)(1)] only specifies that the single, continuous, two-year statute of limitations begins to run with *the appointment of a trustee under one of the enumerated chapters* [sic] ...

37 F.3d at 1332 (emphasis added).

Following the lead of this *dicta,* other judges in this District have held that an appointed panel trustee in a Chapter 7 case converted from one under Chapter 11 is not time-barred from bringing a preference claim by the failure of the debtor in possession to sue it out within two years after its Chapter 11 filing. *Stoebner v. Vaughan,* 179 B.R. 600, 603–04 (D.Minn.1995) (Doty, J.); *In re T.G. Morgan, Inc.,* 175 B.R. 702, 707 (Bankr. D.Minn.1994) (Kressel, J.).[11] Several other courts have agreed. *E.g., In re Wingspread Corp.,* 186 B.R. 31, 34 (S.D.N.Y.1995); *In re Lakeside Community Hospital,* 191 B.R. 122, 124–125 (Bankr.N.D.Ill.1996).

The decisions from this District correctly glean the import of the Eighth Circuit's *dicta,* toward a result that follows the plain language of § 546(a)(1) in a situation materially indistinguishable from the one at bar.[12] In the first place, § 1107(a)'s reference to the "limitations on a trustee serving in a case under" Chapter 11 refers to statutorily-imposed confines on the authority and duties of a trustee—and not to the time limits by which either a trustee or a debtor in possession may commence an action to enforce their avoidance powers. *In re T.G. Morgan, Inc.,* 175 B.R. at 707. Second, § 546(a)(1)'s reference to the "appointment of a trustee" should be taken literally, to denote the affirmative process of appointment, structured and regulated by the specific provisions of the Bankruptcy Code identified in that statute. This is something very different from the investiture of a petitioning

**10.** There is one more decision at the circuit level: *In re MortgageAmerica Corp.,* 831 F.2d 97 (5th Cir.1987). At a first, superficial glance it seems to support the Plaintiff's position:

> We agree that the limitations period under section 546(a) should commence consistent with the appointment of the trustee through a written order.

831 F.2d at 98. A more thorough reading shows that the issue in *MortgageAmerica Corp.* was whether the making of a docket entry reflecting a bankruptcy judge's "oral appointment" of a Chapter 11 trustee started the limitations period, or whether the much later entry of a *nunc pro tunc* written order did so. Because the defendant in *MortgageAmerica Corp.* apparently never even raised the argument that CPI does here, the Fifth Circuit's decision really does not have anything to say to the matter at bar.

**11.** These decisions arose out of the bankruptcy case of T.G. Morgan, Inc., which was commenced under Chapter 11, in which no trustee was appointed while it remained under Chapter 11, and which was later converted to a case under Chapter 7.

**12.** In an earlier decision, Judge Doty had held that § 546(a)(1) barred a post-confirmation preference action commenced by a reorganized debtor, where it was brought more than two years after the debtor's Chapter 11 filing. *In re Harstad,* 170 B.R. 666 (Bankr.D.Minn.1994). In *Stoebner v. Vaughan,* Judge Doty modified the theory he had applied in *Harstad* in light of the intervening decision in *McCuskey. Stoebner v. Vaughan* did not implicate the effect of McCuskey's *dicta* on a situation like that in *Harstad,* where no trustee was ever appointed. Neither does the case at bar.

debtor with a trustee's powers pursuant to § 1107, which takes place purely by operation of law. *Id.* Finally, and most tellingly, § 1107 is just not among the statutory vehicles that are enumerated in § 546(a)(1). *Stoebner v. Vaughan*, 179 B.R. at 603; *In re T.G. Morgan, Inc.*, 175 B.R. at 707. *See also In re Midway Indust. Contractors, Inc.*, 184 B.R. 551, 554 (Bankr.N.D.Ill.1995).

Though they are against the majority line of decisions, the holdings from this Circuit and District better comport with the Supreme Court's "plain language" jurisprudence. They also recognize good policy reasons that support the distinctions they glean from the wording and structure of the Code. *In re T.G. Morgan, Inc.*, 175 B.R. at 707. *See also In re Korvettes, Inc.*, 67 B.R. 730, 733–734 (S.D.N.Y.1986); *In re Midway Indust. Contractors, Inc.*, 184 B.R. at 555–556. Their rationale defeats CPI's argument that this adversary proceeding is time-barred because the Debtor failed to sue it out during the first two years of its reorganization case.

C. Section 546(a) Statute of Limitation: Nomination of "Trustee" Under Debtor's Confirmed Plan.

█ In the alternative, CPI argues that § 546(a)(1) bars this adversary proceeding because the Plaintiff did not commence it within two years of the date on which the Debtor's plan was confirmed. It points out that the Debtor's plan provides, as part of its description of the "Means of Carrying Out Plan":

> In order to secure to creditors the payments promised by this Plan, the debtor will nominate as trustee for the benefit of creditors Mr. Luther Stalland, an attorney … All payments promised by this Plan will be made to Mr. Stalland, who will, in turn, make disbursements to classes of creditors as provided herein.

Other language in the same paragraph required the Debtor to execute a mortgage on its business premises in favor of Stalland, as trustee, to secure the Debtor's obligations to creditors; it also required Stalland to monitor and enforce a pre-existing lease of a

portion of the premises, to ensure that the rents from that portion and the long-term beneficial use of the premises were applied to the purposes contemplated by the plan.

Further in the plan, the Debtor provided:

> Debtor reserves the right to assert the recovery of pre-petition transfers which might constitute preferences pursuant to the provisions of § 547 or "fraudulent" conveyances pursuant to the provisions of § 548. Any such recoveries, net of expenses and fees, will be used by the debtor to make the payments provided for creditors in [the class of unsecured claims].

Stalland did accept the position of "trustee," and held it until he resigned shortly before the hearing on the U.S. Trustee's motion for conversion.

Arguing by analogy from *In re Harstad*, 170 B.R. at 669, CPI maintains that

> This Court must hold that section 546(a) applies to the trustee elected under the confirmed plan such that … this action was time barred as of July 17, 1994 or two years after the election of the trustee under the Confirmed Plan and Confirmation Order.

Plans of reorganization sometimes contain provisions that nominate a person or entity other than the reorganized debtor as a "trustee," an "estate representative," or a "disbursing agent." Such parties are then invested with the right to collect identified assets and the duty to distribute their proceeds to creditors in accordance with the plan. This Debtor's plan provided for just that; the debtor "nominated" a specific individual to receive all of the post-confirmation business revenues that it committed to distributions to unsecured creditors, and to administer them.[13]

This, however, was the "trustee's" sole right and duty. As such, it was a far cry from the panoply of powers and obligations that is the charge of a trustee statutorily-empowered under the Bankruptcy Code. The ministerial functionary contemplated by

---

13. It did so in response to the hostility it had received throughout the case from various creditors, including CPI. They had continually insist-

ed that the Debtor's management was neither willing or able to insure that creditors received their due after confirmation.

the Debtor's plan cannot be blithely equated with a trustee formally appointed under one of the sections identified in § 546(a)(1).

Several courts have addressed the issue of whether the nomination or investiture of a "trustee" or disbursing agent under a confirmed plan commences the period of limitations under § 546(a). Predictably, they have split on their result. A number, including the Ninth Circuit, have held that the "appointment" or investiture of a third-party estate representative or agent under a confirmed plan is not among the triggering events identified in § 546(a). *In re DeLaurentiis Entertainment Group, Inc.*, 87 F.3d 1061, 1064 (9th Cir.1996); *In re National Steel Service Center, Inc.*, 170 B.R. 745 (N.D.Ga.1994); *In re Mars Stores, Inc.*, 150 B.R. 869 (Bankr.D.Mass.1993); *In re Hunt*, 136 B.R. 437 (N.D.Tex.1991). Others have equated a post-confirmation disbursing agent with a trustee for the purposes of § 546(a). *In re Gibbons Grable Co.*, 142 B.R. 164 (N.D.Ohio 1992); *In re AOV Indust., Inc.*, 62 B.R. 968, 974 (Bankr.D.D.C.1986) (holding, however, that avoidance action was timely because it was commenced within two years of date of agent's "appointment" under a plan). *See also In re Iron–Oak Supply Corp.*, 162 B.R. 301, 308 (E.D.Cal.1993).[14]

The reasoning of the former line of decisions tracks the rationale that defeated CPI's first argument. Again, it is dictated by the plain language of the statute, and for that reason it is more objectively principled at a deeper level. The Debtor's nomination of a

"trustee," then, did not trigger § 546(a)(1). Because the more general statute of limitations under § 546(a)(2) applies, this action is not time-barred and CPI is not entitled to dismissal on this theory either.

### D. Time-Barring Under Terms of Confirmation Order.

 CPI raises a third time-barring theory, based on the terms of the order that confirmed the Debtor's plan. Entered on July 17, 1992 on this Court's standard form, the order provided:

4. OTHER PROCEEDINGS. All other motions, applications or complaints shall be filed within 90 days after the date of this order. Any time limit provided in this order may be extended or waived by the court for cause after notice and a hearing. Nothing in this order shall preclude any proceeding in another court with jurisdiction and within time limits otherwise applicable.

Under the first sentence of this provision, as CPI would have it,

any implied avoidance powers that survived confirmation were lost 90 days after July 17, 1997, irrespective of who held any such powers[;]

therefore, the Plaintiff does not have them to wield against transferees like itself.[15]

This argument does not acknowledge the reason why the form confirmation order fixes the deadline in question, and misperceives its effect. By its terms, the deadline does not purport to accelerate any applicable statute

---

14. Because the "designated representative" in *Iron–Oak Supply Corp.* brought its action within two months after the confirmation of a liquidating plan, the decision does not treat the issue at bar. However, the tenor of *Iron–Oak Supply Corp.*, in its dicta, is that only formal appointment under one of the sections identified in § 546(a)(1) commences the two-year limitations. *See* 162 B.R. at 308.

15. In another part of his brief, CPI's counsel maintains that the Debtor's plan was somehow ambiguous, because it retained avoidance powers under 11 U.S.C. §§ 547–548 in the Debtor, but vested a third party with certain other powers for the benefit of creditors. This notion is silly. It may not be often done, but there is certainly no inconsistency or ambiguity in splitting post-confirmation duties and powers like this. In this case, there was good reason to

structure things this way. The Debtor had large priority tax claims to service out of its net post-confirmation revenues. The servicing of those claims promised to take several years. Several parties had expressed concern that the distribution rights of unsecured creditors would be jeopardized if deferred so long and left under the responsibility of the Debtor's management. The role of the "trustee" was created in direct response to this specific concern. As a result, his powers were limited to monitoring the Debtor's long-term post-confirmation operations to ensure that all net revenues were properly applied pursuant to the plan. The Debtor obviously did not contemplate that the vesting of statutory avoidance powers in the "trustee" was necessary, even if it thought that it should retain them. No creditor took issue with this proposal when the plan came up for confirmation.

of limitations, or to supersede any provision of the federal or local rules of bankruptcy procedure. To have this effect, it would have to mention the abrogated statute or rule. It would also have to set forth findings to establish some sort of cause for such an abrogation. The lack of such recitations reflects the fact that this term is purely *ministerial* in nature and origin. So does the term's placement among other provisions governing the post-petition status of the Debtor's case. The provision prompts reorganized debtors to consummate their plans as quickly as possible, so court files in Chapter 11 can be closed promptly and efficiently.

With its companion,[16] the term is analogous to a scheduling order under FED. R.CIV.P. 16(e)—or, even more aptly, under current 11 U.S.C. § 105(d)(2)[17]. As such, it functions as a caseload management device. However, it cannot, and does not, affect any substantive rights, or the application of statutes of repose, general or specific, to the assertion of such rights.

This is clearly reflected in the remaining sentences of Term 4. The second sentence reserves to the court the power to alter any of the deadlines fixed in the other terms of the order. Even more on point, the third sentence clearly contemplates that post-confirmation proceedings involving a reorganized debtor may be brought in any other court, subject to the establishment of jurisdiction there and *subject to applicable statutes of limitation.* In short, Term 4 functions as a notice to reorganized debtors and all other parties in interest: *to use the Bankruptcy Court as a forum* for post-confirmation litigation, through the vehicle of the Chapter 11 case *as originally opened,* they have to act quickly. It functions as nothing

more than that, however, because it just does not purport to do so.

The passage of the deadline specified under Term 4 did not divest the reorganized debtor, or any successor to it, of the right to bring an adversary proceeding like the present one. This adversary proceeding is not time-barred on this theory, either.

### E. Time-Barring by Laches.

■ As a final theory, CPI argues that this Court should bar the Plaintiff from prosecuting this adversary proceeding because of the simple passage of time.

■ Under the equitable doctrine of laches, a claim may be dismissed on motion of a defendant where the plaintiff unreasonably and inexcusably delayed bringing the claim, and where the delay resulted in material prejudice to the defendant. *Goodman v. McDonnell Douglas Corp.,* 606 F.2d 800, 804 (8th Cir.1979); *Hurst v. United States Postal Serv.,* 586 F.2d 1197, 1199–1200 (8th Cir. 1978); *Carlson v. City of Marble,* 612 F.Supp. 669, 672 (D.Minn.1985); *Funchie v. Packaging Corp. of America,* 494 F.Supp. 662, 666 (D.Minn.1980). Where an action has been commenced within an applicable statute of limitations, the burden of proof on the elements of laches lies heavily on the proponent. *Hurst,* 586 F.2d at 1200. In such a case, laches generally will not lie to bar the action. *Advanced Cardiovascular Systems, Inc. v. SciMed Life Systems, Inc.,* 988 F.2d 1157, 1161 (Fed.Cir.1993).

Though it invokes the doctrine by name, CPI does not use this formulation in so many words. However, it apparently has the reasonableness of delay in mind when it cites the *Harstad* court's observation, 170 B.R. at

---

**16.** The form also provides, in pertinent part:

 3. OBJECTIONS TO CLAIMS. All objections to proofs of claim ... shall be served and filed within 30 days after the date of this order, or 30 days after the claim was filed, whichever is later.

**17.** 11 U.S.C. § 105(d)(1), enacted in the Bankruptcy Reform Act of 1994, authorizes the Bankruptcy Court to

 hold a status conference regarding any case or proceeding under [the Bankruptcy Code] after notice to the parties in interest....

In turn, § 105(d)(2) empowers it to

unless inconsistent with another provision of [the Bankruptcy Code] or with applicable Federal Rules of Bankruptcy Procedure, issue any order at any such conference prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically.

The statute then identified seven described sorts of terms that may constitute such conditions. All of them fix deadlines for specific actions in the course of reorganization and bankruptcy estate administration.

669, that subjecting a debtor in possession to a two-year limitations period under § 546(a) encourages it to negotiate early and in good faith with parties who are both creditors and potential avoidance defendants, "and to disclose early on to its creditors the potential for recovery of assets for the estate." CPI insists:

> For that reason, if for no other, this Court should impose an equitable two-year limitation period in this case running from January 24, 1991.

As a proponent's case on the delay element, this is rhetorical, but nothing more. One cannot deny the soundness of the policy argued. However, even as observed in *Stoebner v. Vaughan*, that policy simply does not apply to a situation where Congress has dictated a different approach on the basis of other policy considerations. The Plaintiff may have waited until very nearly the last minute—but, as concluded earlier, she still made it under the statute. She did not do so unreasonably or inexcusably.[18]

On the element of prejudice, CPI points in a very general way to the fact that the passage of time has dispersed the Debtor's employees, and relevant documents may have wandered. However, it does not identify any person or thing that is no longer available to furnish evidence on the merits. This allegation, bare as it is, does not constitute the particularized showing that a proponent must make on this element.

There is a broader reason to reject a laches defense here, which is more specific to bankruptcy. CPI proposes the use of equitable doctrine to reconstruct provisions of the Bankruptcy Code that otherwise may leave it vulnerable to the Plaintiff's avoidance powers. Basically, it maintains, it would be grossly unfair to apply the two-year limitations period to only the situations identified in § 546(a), even though the one at bar is not among them; therefore, the Court should stretch the ambit of a statute of repose beyond the statute's express terms.

This argument overassumes the reach of equity in bankruptcy proceedings. The binding pronouncements of the senior courts establish that the Bankruptcy Court's

> broad equitable powers may only be exercised in a manner which is consistent with the provisions of the [Bankruptcy] Code,

*Johnson v. First Nat'l Bank of Montevideo,* 719 F.2d 270, 273 (8th Cir.1983), and that

> [w]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code,

*Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 968, 99 L.Ed.2d 169 (1988).

As the Eighth Circuit has suggested, and the District and Bankruptcy Courts for this District have held, § 546(a)(1) triggers a two-year limitations period only with the appointment of a trustee under one of its identified provisions. That did not happen in the Debtor's case until January 15, 1993, less than two years before the Plaintiff sued out this adversary proceeding. Applying the bar of laches to override the clear import of the statute is beyond this Court's equitable powers. CPI, then, is not entitled to have this matter terminated on this ground either.

F. Dismissal of Request for Avoidance of Post–Petition Transfers in Count II.

In the alternative, and as to Count II of the Plaintiff's complaint alone, CPI argues that the Plaintiff does not have the power to avoid unauthorized post-petition transfers pursuant to 11 U.S.C. § 549(a). It correctly notes that the confirmed plan did not preserve such causes of action for the reorganized debtor; thus, it argues, under *Harstad v. First American Bank,* 39 F.3d 898 (8th Cir.1994), those causes of action were extinguished upon confirmation.

 This argument presents a more complex set of issues than CPI frames.[19] Fur-

---

**18.** After all, she came into the claim as a successor by operation of law, under a clear statutory grant of a two-year period to evaluate the claim and to sue it out if appropriate. As a fiduciary exercising independent judgment in a very different form of bankruptcy case, she could not be bound by the Debtor's inaction in bringing suit on it.

**19.** The confirmation of a plan of reorganization reconfigures a debtor's property rights and obligations of payment, effecting a new legal land-

ther discussion is unnecessary, however, because the Plaintiff omitted Count II from her amended complaint; apparently she has forgone all claims to avoid the transfers in question, as to the current defendants. This part of CPI's motion is now moot.

### G. CPI's Motion for Imposition of Sanctions.

■■■ Peppering the Plaintiff with a mass of accusations,[20] CPI's counsel requested the imposition of sanctions pursuant to FED. R.BANKR.P. 9011(a).[21] The result on CPI's main motion—entirely in favor of the Plaintiff—dooms this demand. Even had CPI prevailed on the merits, however, the Plaintiff acted in good faith in pursuing the Defendant(s). The statute itself certainly seemed to allow for the litigation. There was no binding, on-point precedent that barred it, and there certainly was no unanimity in the persuasive authority from other jurisdictions. The issues being fair game for litigation, the Plaintiff was not out of bounds in suing this matter out—regardless of the passage of

time of which CPI loudly complains, and certainly notwithstanding the unwarranted bombast of its counsel's maledictions.

### ORDER

Upon the foregoing·discussion, then,

IT IS HEREBY ORDERED:

1. The Plaintiff is granted leave to amend her complaint to the form of that filed on May 16, 1995. Within ten days of the date of this order, the Plaintiff shall obtain the issuance of a summons on that complaint and shall serve both on all named defendants. Pursuant to FED.R.CIV.P. 15(a), *as incorporated by* FED.R.BANKR.P. 7015, the Defendants shall serve and file an answer or answers within ten days after service of the amended complaint on them.

2. The motion of Crel Petroleum, Inc. for dismissal of this adversary proceeding, construed as one for summary judgment, and for

---

scape. *E.g., In re Kellogg Square Partnership*, 160 B.R. 343, 368 (Bankr.D.Minn.1993); *In re Ernst*, 45 B.R. 700, 702 (Bankr.D.Minn.1985). *Harstad v. First American Bank* illustrates one aspect of the way in which confirmation remakes the world around the reorganized debtor, legally and financially: if a debtor in Chapter 11 does not explicitly preserve its pre-confirmation avoiding powers by name in the terms of its plan, pursuant to 11 U.S.C. § 1123(b)(3), it loses them on confirmation. 39 F.3d at 902–903. CPI's point seems to be that the Debtor did not hold any avoidance powers after confirmation because its plan did not preserve them in so many words, so such "assets" did not pass into the Chapter 7 estate upon·conversion. This theory finesses the fact that, technically speaking, avoidance powers and rights of recovery under 11 U.S.C. §§ 544–551 are not property·of the bankruptcy estate. Under 11 U.S.C. § 541(a)(1), "all legal or equitable interests of the debtor in property *as of the commencement of the case*" pass into the estate. A trustee's avoiding powers spring into existence by operation of law *upon* the commencement of a case. Once the trustee exercises avoidance powers, of course, the *recovered assets* become property of the estate. 11 U.S.C. §§ 541(a)(3)–(4). However, the right of recovery itself probably cannot be said to be property reposing in the estate; it is created independently by statute, and lodges with whomever the statute empowers to wield it.

20. Among other things, counsel accuses the Plaintiff of making "little or no effort to name"

CPI as a proper party-defendant; of making verified allegations in her complaint that "were reckless if not intentionally disingenuous"; of failing to "offer any good faith arguments for the extension, modification or reversal of existing law, including the Confirmation Order"; of bringing this adversary proceeding "for the improper purpose of extracting a nuisance settlement" from CPI; of bringing this action in bad faith; and of violating a "higher standard" of conduct in litigation that, he maintains, should be imposed on trustees in bankruptcy.

21. This rules requires that, *inter alia*, every motion or other paper served or filed in a bankruptcy case must be signed, and goes on to provide that the signature of an attorney

> constitutes a certificate that the attorney ... has read the document; that to the best of the attorney's ... knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact 'and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation or administration of the case.

The rule then provides for imposition of "an appropriate sanction" on an attorney signing a document in violation of this "automatic certification of merit." *See, in general, In re KTMA Acquisition Corp.*, 153 B.R. 238 (Bankr.D.Minn. 1993).

imposition of sanctions, is denied in all respects.